6 Cal.3d 176 (1971)
491 P.2d 421
98 Cal. Rptr. 837
GERALD F. NEEL et al., Plaintiffs and Appellants,
v.
MAGANA, OLNEY, LEVY, CATHCART & GELFAND et al., Defendants and Respondents.
Docket No. L.A. 29865.
Supreme Court of California. In Bank.
December 2, 1971.
*179 COUNSEL
Wagner & Scuderi and Robert S. Scuderi for Plaintiffs and Appellants.
Jack Tenner and William B. Murrish for Defendants and Respondents.
OPINION
TOBRINER, J.
In this suit for legal malpractice plaintiffs appeal from a summary judgment against them grounded upon the two-year statute of limitations of Code of Civil Procedure section 339. That judgment rests upon the rule that a cause of action for malpractice by an attorney arises, and the limitation period commences, at the time of the negligent act. In this case, and in the companion case of Budd v. Nixen, post, page 195 [98 Cal. Rptr. 849, 491 P.2d 433], we undertake to review this rule. Upon reconsideration, we find that the rule as to legal malpractice contrasts with the rule as to accrual of causes of action against practitioners in all other professions; it ignores the right of the client to rely upon the superior skill and knowledge of the attorney; it denigrates the duty of the attorney to make full and fair disclosure to the client; it negates the fiduciary character of the attorney-client relationship. We conclude that the statute of limitations for legal malpractice, as for all professional malpractice, should be tolled until the client discovers, or should discover, his cause of action.
On August 13, 1968, plaintiffs filed their complaint, alleging that in 1961 they engaged one Delaney as their attorney to file a wrongful death action against San Bernardino County. Without informing plaintiffs, Delaney associated as counsel of record defendant attorneys, a partnership practicing *180 under the name of Magana, Olney, Levy, Cathcart & Gelfand. Defendants prepared, and on May 25, 1962, Delaney filed, a complaint against the county. Neither defendants nor Delaney arranged for service of summons,[1] and on December 10, 1965, the court dismissed plaintiffs' action for failure to serve summons within three years of the filing of the complaint. (Code Civ. Proc., § 581a.) Plaintiffs further allege that if their case against the county had come to trial, they would have prevailed.
The complaint then alleges that defendants fraudulently concealed their negligence from plaintiffs and, during 1966 and 1967, falsely represented to plaintiffs that the suit against the county was still pending. Plaintiffs did not know or suspect that their action had been dismissed until they consulted independent counsel on December 21, 1967. In answer defendants admit the association of attorneys and the dismissal of plaintiffs' suit against the county, but plead the statute of limitations of section 339 as an affirmative defense. Subsequently the deposition of plaintiff Gerald Neel revealed that he did not know of the association of defendants in the case until December of 1967, and that the misrepresentations referred to in the complaint were those of Delaney.[2]
Defendants then moved for summary judgment, asserting that the plaintiffs' cause of action accrued on May 25, 1965, the last day for service within the three-year period of section 581a, and that plaintiffs' action was barred by limitations as of May 25, 1967. They acknowledged that Delaney, by reason of his misrepresentations to plaintiffs, would be estopped to assert the statute of limitations. They contended, however, that they themselves made no misrepresentations and that they bore no responsibility for those of Delaney. The trial court agreed and granted summary judgment.
(1) Legal malpractice consists of the failure of an attorney "to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." (Lucas v. Hamm (1961) 56 Cal.2d 583, 591 [15 Cal. Rptr. 821, 364 P.2d 685].)[3] (2) When such failure proximately causes damage, *181 it gives rise to an action in tort.[4] (3) Since in the usual case, the attorney undertakes to perform his duties pursuant to a contract with the client, the attorney's failure to exercise the requisite skill and care is also a breach of an express or implied term of that contract.[5] Thus legal malpractice constitutes both a tort and a breach of contract.[6]
A cause of action for breach of an oral contract carries a two-year statute of limitations (Code Civ. Proc., § 339, subd. 1);[7] one for breach of a written contract falls under the four-year limit of section 337, subdivision 1.[8] Actions in tort for negligence are classified as to the nature of the damage. An action for "injury" or "death" comes under the one-year limitation of section 340, subdivision 3;[9] three-year limitations govern damage to real property (Code Civ. Proc., § 338, subd. 2) or to tangible personal property (Code Civ. Proc., § 338, subd. 3).[10] Medical malpractice, formerly classified under the one-year limit of section 340, now falls under a separate statute of limitations in section 340.5, which provides for a one-year period of limitation from discovery of the cause of action, but bars any action filed more than four years from date of injury.[11]
*182 (4) Malpractice in the legal field usually causes damage to intangible property interests; the Code of Civil Procedure provides no statute of limitation expressly governing actions to redress such damage. Section 339, subdivision 1, however, is not limited to actions for breach of an oral contract, but extends to any "action upon a contract, obligation or liability not founded upon an instrument of writing." (Italics added.) (5) Numerous decisions have established that this section governs an action for negligent injury to intangible property interests.[12] In our recent decision in Alter v. Michael (1966) 64 Cal.2d 480 [50 Cal. Rptr. 553, 413 P.2d 153], we expressly reaffirmed that a tort action for malpractice by an attorney falls within the two-year period of section 339, and not the one-year period of section 340.
(6, 7) Although plaintiffs may elect between their tort and contract remedies,[13] that election in the present case does not affect the period of limitation. Whether viewed as a tort action for negligent injury to intangibles, or as a contract action for breach of an implied duty of care, section 339, subdivision 1 provides the governing period of two years.
Plaintiffs filed the present complaint eight months after they discovered their cause of action, but over three years after the last date for service of summons on their action against the county. Under the rule that provides that a cause of action for legal malpractice accrues at the time of the last negligent act, plaintiffs' action is barred unless plaintiffs can somehow establish that defendants are responsible for, and estopped by, Delaney's misrepresentations. If, however, we apply the principle developed in malpractice cases involving other professions  that the cause of action does not accrue until discovery  plaintiffs' action would clearly be timely. The case thus raises the issue whether members of the legal profession should *183 enjoy a preference as to the date when they may successfully bar adverse claims under the statute of limitations. In this case we probe the issue whether the client's claim should be outlawed before he knew of it or should have known of it. In the companion case of Budd v. Nixen we examine the effect of the requirement that the client, who knows or should have known of the attorney's negligence, must be damaged before the statutory limitation period starts to run.
We begin by recounting the history of the California decisions on the period of limitations in legal malpractice actions, emphasizing those decisions which bear upon the issues of this case and of Budd v. Nixen. Our recital begins with Hays v. Ewing (1886) 70 Cal. 127 [11 P. 602]. The plaintiff there sued in 1884, alleging defendant's negligence in a collection suit which was dismissed in November of 1881. The court stated simply that "so far as [this action] is based on any neglect of the defendant prior to the judgment of November 1881, [it] was barred by section 339 of the Code of Civil Procedure." (70 Cal. at p. 128.)
Since the dismissal in the collection suit occurred two and one-half years before the institution of the malpractice action, clearly the two-year limitation of section 339 barred any cause of action based on negligent conduct which occurred prior to the dismissal. Obviously this court accepted the date of dismissal of the suit  that is, the date upon which the client suffered damage  as the crucial point from which the statute of limitations should run. Indeed, the court refused to adopt as the critical time the date of the affirmance of the dismissal on appeal. Nevertheless, the publisher's headnote summarized the holding as follows: "a cause of action against an attorney for neglect of duty in the management of an action is barred at the expiration of two years after the neglect occurred." (Italics added.) We search in vain within the body of the opinion or within the facts of the case for any justification for this publisher's note. Yet this unwarranted headnote generated the peculiar rule that only in legal malpractice cases does the statute of limitations begin to run before damage and before discovery.
The issue of delayed accrual of the limitations period under section 339 first arose in Lattin v. Gillette (1892) 95 Cal. 317 [30 P. 545], which involved negligence by a non-attorney title searcher. The court held that the action accrued at the time of the negligent act; it specifically rejected contentions that accrual should be deferred until damage occurred or until the client ascertained the error in the title report. The opinion in Lattin facilely ignores the practical consequence  that a title report which cannot be relied upon two years after its issuance is practically valueless. (See J.H. Trisdale, Inc. v. Shasta etc. Title Co. (1956) 146 Cal. App.2d 831, 839 *184 [304 P.2d 832].) In 1913 the Legislature amended section 339 to provide expressly that an action founded upon an abstract of title shall not be deemed to accrue until the discovery of the loss or damage, thereby effectively overruling Lattin v. Gillette.
In Lally v. Kuster (1918) 177 Cal. 783 [171 P. 961], the court dismissed a client's suit to collect a note because of failure to prosecute four years and seven months after the institution of the action. In a subsequent malpractice suit, the attorney contended that the cause of action accrued when he first disobeyed the client's direction to seek an early date. Rejecting this argument, the court stated that if the malpractice suit rested upon the attorney's delay, "the cause of action cannot be said to arise until such delay has resulted in some injury, as it did when the court dismissed the case because of the delay." (177 Cal. at p. 791.) The opinion does not state when the client discovered the dismissal, since delay of accrual to the date of dismissal sufficed to place the action within the limitation period.
Following Lally in postponing accrual of the action until damage, Jensen v. Sprigg (1927) 84 Cal. App. 519 [258 P. 683], became the first case to analyze the date of discovery rule. Jensen begins by repeating the misleading headnote of Hays v. Ewing, but does not rely upon it. It then states that "[the client] urges that `plaintiff's cause of action for the loss of this remedy by personal judgment against Dorr, resulting from the neglect of defendant [attorney], accrued when the delay resulted in damages or injury to plaintiff,' and cites Lally v. Kuster, 177 Cal. 783 [171 Pac. 961], in support of his contention. We agree with appellant in his contention, but it is apparent that the loss of his remedy by personal judgment against Dorr and the damage or injury resulting from such loss accrued when Dorr was adjudged a bankrupt, and that as appellant had knowledge of such adjudication in 1908, the statute had run before he began his action [in 1920]." (84 Cal. App. at p. 525.) The court then examines the issue of discovery, but, since the client knew of the cause of action 12 years before he filed suit, it concludes with the statement that "Unquestionably where a confidential relationship such as the relationship between attorney and client, exists, failure to discover the facts constituting fraud or misrepresentation may be excused, but we know of no authority holding that failure on the part of an attorney to notify his client of a fact already within his client's knowledge is fraudulent concealment." (84 Cal. App. at p. 526.)
Wheaton v. Nolan (1934) 3 Cal. App.2d 401 [39 P.2d 457], also held that the statute ran from the time of incurrence of damage, here the date when other creditors had established liens against the client's debtor in excess of the debtor's assets. The court rejected the argument that the period *185 of limitation should not run until knowledge of the negligence, on the ground that, although the client did not know of his cause of action, he could with ordinary diligence have discovered it.
Following the ubiquitous headnote of Hays v. Ewing, supra, DeGarmo v. Luther T. Mayo, Inc. (1935) 4 Cal. App.2d 604, 606 [41 P.2d 366], stated the "rule" that a legal malpractice action was "`barred at the expiration of two years after the neglect occurred'" (4 Cal. App.2d at p. 606). The court selected the date upon which the client suffered an adverse judgment as the day from which the statute of limitations ran against his action. Accordingly, the court held that conduct subsequent to the judgment, including the motion for new trial and the appeal, related to additional damages and did not affect the date upon which the cause of action accrued for the purpose of the statute of limitations.
After DeGarmo a 29-year period of silence ensued during which the reports contain no appellate decisions on the limitation period for legal malpractice. Thus, as of 1963, no case had rejected by decision or express dictum a date of discovery rule for attorney's malpractice; two cases, Jensen v. Sprigg, supra, and Wheaton v. Nolan, supra, had assumed that justifiable non-discovery would extend the period of limitation. On the other hand, the date of discovery rule had been adopted as to medical malpractice; Huysman v. Kirsch (1936) 6 Cal.2d 302 [57 P.2d 908], overturning an earlier precedent, had held that in an action for medical malpractice the period of limitations did not begin until discovery. This medical malpractice rule had been extended to other professions. (See infra at p. 186.) Nonetheless, in Griffith v. Zavlaris (1963) 215 Cal. App.2d 826 [30 Cal. Rptr. 517], the Court of Appeal, reviewing the previous cases, decided that it must adhere to the "time-honored rule," "harsh" though it might be, that the statute of limitations "commences to run," not from the date of discovery, but "from the date the negligent act occurs," (215 Cal. App.2d at pp. 828, 830).
Following Griffith v. Zavlaris, the above rule as to accrual of the statute of limitations was followed by two Court of Appeal decisions (Yandell v. Baker (1968) 258 Cal. App.2d 308, 314-315 [65 Cal. Rptr. 606]; Eckert v. Schaal (1967) 251 Cal. App.2d 1, 5-6 [58 Cal. Rptr. 817]), and noted in dictum in many cases in this court[14] and the Court of Appeal.[15] Characteristically, *186 none of the cases attempt to defend or justify the rule; many are critical. It is a "harsh" rule (Griffith v. Zavlaris, supra, 215 Cal. App.2d at p. 830); unfair (Yandell v. Baker, supra, 258 Cal. App.2d at p. 316); discriminatory (Alter v. Michael (1966) 64 Cal.2d 480, 483 [50 Cal. Rptr. 553, 413 P.2d 153]).
In Heyer v. Flaig (1969) 70 Cal.2d 223 [74 Cal. Rptr. 225, 449 P.2d 161] we established an exception to the rule, holding that the statute of limitations does not begin to run against prospective beneficiaries of a negligently drawn will until the death of the testator. "Before the testatrix' death, the plaintiffs can state no cause of action because until that time there can be no injury." (70 Cal.2d at p. 231.)
In deciding Heyer v. Flaig, we observed that "The very theories which led to the rule in medical malpractice cases that the statute runs only from the date of discovery of the negligence could be applied to [a legal malpractice case.] ... The judicial rule against postponed accrual of the statute of limitations in legal malpractice actions rests upon a tenuous basis." (70 Cal.2d at p. 233, fn. 7.)
While the courts continued their doleful reiteration of the rule that actions for legal malpractice accrue at the time of the negligent act, the discovery rule of Huysman v. Kirsch (1936) 6 Cal.2d 302 [57 P.2d 908] enjoyed a happier development.[16] That principle, that an action for malpractice does not accrue until discovery, has been applied to suits against an escrow holder (Amen v. Merced County Title Co. (1962) 58 Cal.2d 528, 534 [25 Cal. Rptr. 65, 375 P.2d 33]); an accountant (Moonie v. Lynch (1967) 256 Cal. App.2d 361, 365-366 [64 Cal. Rptr. 55]); a stockbroker (Twomey v. Mitchem, Jones & Templeton, Inc. (1968) 262 Cal. App.2d 690, 725-726 [69 Cal. Rptr. 222]); a title company (Cook v. Redwood Empire Title Co. (1969) 275 Cal. App.2d 452, 454-455 [79 Cal. Rptr. 888]); and an insurance agent (United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 597-598 [83 Cal. Rptr. 418, 463 P.2d 770].)[17] In *187 each of these cases the defendant had argued that the rule of the legal malpractice cases should apply to bar the action, and in each case the courts rejected that plea. As of the date of our most recent decision, United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., we could safely set forth a general rule that in actions for professional or fiduciary malpractice, the cause of action does not accrue until the plaintiff discovers, or should discover, the negligence, and note that the legal malpractice cases were the lone exception to that rule. (1 Cal.3d at p. 596.)
In sum, the rule against delayed accrual of legal malpractice actions finds many critics, but no defenders.[18] Far from being as old or as well-established as often assumed, it rests upon a 1963 decision, Griffith v. Zavlaris, in which the Court of Appeal reluctantly held itself bound by ill-considered dictum of earlier cases. The current holding contrasts with the rule as to all other professional malpractice, and no one, including defendants in the present case, offer any justification for the inconsistency.[19] We conclude that we should neither continue the automatic application of this rule nor seek to carve out a limited exception for this case; that we should, instead, reexamine the ground upon which it stands.
(8) In ordinary tort and contract actions, the statute of limitations, it is true, begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action, or of the identity of the wrongdoer, does not toll the statute.[20] In cases of professional malpractice, however, postponement of the period of limitations until discovery *188 finds justification in the special nature of the relationship between the professional man and his client.
In the first place, the special obligation of the professional is exemplified by his duty not merely to perform his work with ordinary care but to use the skill, prudence, and diligence commonly exercised by practitioners of his profession.[21] If he further specializes within the profession, he must meet the standards of knowledge and skill of such specialists.[22]
Corollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it. He cannot be expected to know the relative medical merits of alternative anesthetics nor the various legal exceptions to the hearsay rule. If he must ascertain malpractice at the moment of its incidence, the client must hire a second professional to observe the work of the first, an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client.[23]
In the second place, not only may the client fail to recognize negligence when he sees it, but often he will lack any opportunity to see it. The doctor operates on an unconscious patient; although the attorney, the accountant, and the stockbroker serves the conscious client, much of their work must be performed out of the client's view. In the legal field, the injury may lie concealed within the obtuse terminology of a will or contract; in the medical field the injury may lie hidden within the patient's body; in the accounting field, the injury may lie buried in the figures of the ledger.
(9a) Finally, the dealings between practitioner and client frame a fiduciary relationship.[24] (10) The duty of a fiduciary embraces the obligation *189 to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests. "Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud...." (Pashley v. Pacific Elec. Ry. Co. (1944) 25 Cal.2d 226, 235 [153 P.2d 325].)[25] (11) Thus, as we stated in Amen v. Merced County Title Co. (1962) 58 Cal.2d 528, 534 [25 Cal. Rptr. 65, 375 P.2d 33], "Cases in which the defendant stands in a fiduciary relationship to the plaintiff are frequently treated as if they involved fraudulent concealment of the cause of action by the defendant. The theory is that although the defendant makes no active misrepresentation, this element `is supplied by an affirmative obligation to make full disclosure, and the non-disclosure itself is a "fraud."'"
Thus the fact that a client lacks awareness of a practitioner's malpractice implies, in many cases, a second breach of duty by the fiduciary, namely, a failure to disclose material facts to his client. Postponement of accrual of the cause of action until the client discovers, or should discover, the material facts in issue vindicates the fiduciary duty of full disclosure; it prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure.
These reasons for delayed accrual of action for malpractice apply as much to the legal profession as to others.[26] (9b, 12) "The relation between attorney and client is a fiduciary relation of the very highest character." (Cox v. Delmas (1893) 99 Cal. 104, 123 [33 P. 836].)[27] He, too, owes a duty to "communicate to his client ... whatever information he *190 acquires in relation to the subject matter involved in the transaction...." (Wittenbrock v. Parker (1894) 102 Cal. 93, 101 [36 P. 374].) An immunity from the statute of limitations for practitioners at the bar not enjoyed by other professions is itself suspicious,[28] but when conferred by former practitioners who now sit upon the bench, it is doubly suspicious. (13a) We therefore hold that in an action for professional malpractice against an attorney, the cause of action does not accrue until the plaintiff knows, or should know, all material facts essential to show the elements of that cause of action.[29]
Defendants firstly contend that any departure from the existing rule, however desirable, should come from the Legislature; we explain why we reject that argument. Defendants recognize that no statute specifies when a cause of action for legal malpractice accrues; they acknowledge that the existing rule, that it may accrue before discovery, stems from judicial decision. They contend, however, that once the courts formulated the rule against delayed accrual, the Legislature's statutory failure to override it demonstrates a legislative intention to approve and adopt it.
Defendants rely primarily on Alter v. Michael (1966) 64 Cal.2d 480 [50 Cal. Rptr. 553, 413 P.2d 153]. In that case this court rejected a contention that legal malpractice be reclassified from the two-year limitation of section 339 to the one-year period of section 340. We observed that both section 339 and 340 had been amended frequently to enlarge or alter the categories of actions encompassed within their scope, but that no amendment has *191 mentioned an action for legal malpractice. We concluded that "the Legislature is aware of the decisions declaring that the two-year limitation period of section 339, subdivision 1, governs legal malpractice actions, and has demonstrated an intention to leave that rule unchanged." (64 Cal.2d at p. 483.)
The instant case presents a different problem than did Alter v. Michael; while we determined there the length of the statutory period, we must decide here when it commences. We recognized there that the Legislature has attempted to enact a comprehensive set of statutes of limitation, classifying all civil actions as to their period of limitation. Our task in Alter v. Michael was essentially to interpret the statutory language of section 339; in this connection we observed that previous cases had read that language to include actions for legal malpractice, and that the Legislature had not acted to change that statutory construction. Here we must resolve the different issue as to when the cause of action accrues. (14) The Legislature has enacted no statute which describes for each class of civil action, the date of accrual;[30] in fact, we find no statutory language which could be construed to specify the time of accrual of an action for legal malpractice. In short, Alter v. Michael involved the construction of a statute, a matter on which legislative intent is of major importance; the present case involves a judicially created rule as to which the Legislature has never expressed an intent.
In People v. Daniels (1969) 71 Cal.2d 1119 [80 Cal. Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], which did involve the construction of a statute, we recognized the weakness of inference from legislative inaction. "Legislative silence after a court has construed a statute gives rise at most to an arguable inference of acquiescence or passive approval.... But something more than mere silence should be required before that acquiescence is elevated into a species of implied legislation such as to bar the court from reexamining its own premises." (71 Cal.2d at pp. 1127-1128; see People v. Hallner (1954) 43 Cal.2d 715, 724-725 [277 P.2d 393] (dissenting opinion of Traynor, J.)).
This inference of passive approval clearly falters in the present case. The rule against delayed accrual dates only from Griffith v. Zavlaris, supra, in 1963[31] and has never been the subject of an express holding by this court. *192 (15) Statutes of limitation, moreover, involve technical legal procedure. Problems of the commencement, running, and tolling of limitation periods come frequently and regularly to the appellate courts, and the judiciary develops a kind of expertise in this area. On the other hand, many legislators are not attorneys, and even those who are, do not encounter problems of limitations and accruals of actions in their daily legislative duties. Legislative silence in the present case may indicate that the Legislature has chosen to defer to judicial experience and to repose with the judiciary the rendition of rules for the accrual of causes of action.[32]
Defendants secondly contend that, to avoid an undue burden upon attorneys, the adoption of a date of discovery rule should be accompanied by some absolute cut-off limit beyond which actions are barred, but defendants hasten to urge that a court cannot adopt such an absolute limitation period because to do so would amount to enacting legislation. Thus defendants conclude with the syllogism that if a date of discovery rule should be accompanied by an absolute limitation, but courts cannot enact such limitation, then the courts should not adopt the discovery rule.
We recognize that the instant ruling will impose an increased burden upon the legal profession. An attorney's error may not work damage or achieve discovery for many years after the act, and the extension of liability into the future poses a disturbing prospect. On the other hand, when an attorney raises the statute of limitations to occlude a client's action before that client has had a reasonable opportunity to bring suit, the resulting ban of the action not only starkly works an injustice upon the client but partially impugns the very integrity of the legal profession.
We realize the possible desirability of the imposition of some outer limit upon the delayed accrual of actions for legal malpractice. Section 340.5, which governs actions for medical malpractice, states a limit of one year from discovery but provides a four-year absolute limit absent a showing of concealment of material facts by the defendant. A similar, but possibly *193 longer,[33] absolute limit may be desirable in actions for legal malpractice (see Griffith v. Zavlaris (1963) 215 Cal. App.2d 826, 830-831 [30 Cal. Rptr. 517]; Note (1967) 15 U.C.L.A.L.Rev. 230, 243), or indeed in all actions for professional malpractice.
Yet any such determination of an outer limit is unnecessary in the case at hand. Plaintiffs discovered their cause of action, and brought suit, within about three years and two and one-half months of the negligent act. This time span falls well within the four-year period adopted for medical malpractice (Code Civ. Proc., § 340.5), the six-year period proposed in the U.C.L.A. note (15 U.C.L.A.L.Rev. 230, 243), or any reasonable limitation period likely to be enacted.
Defendants finally contend that any decision establishing a rule delaying accrual until discovery should be given purely prospective effect. (16) "It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation...." (County of Los Angeles v. Faus (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680].) We have recognized exceptions, however, when considerations of fairness and public policy preclude full retroactivity. (See Westbrook v. Mihaly (1970) 2 Cal.3d 765, 800-801 [87 Cal. Rptr. 839, 471 P.2d 847]; Forster Shipbldg. Co. v. County of L.A. (1960) 54 Cal.2d 450, 459 [6 Cal. Rptr. 24, 353 P.2d 736].)
The resolution of this issue of prospective application turns primarily upon the extent of the public reliance upon the former rule (Westbrook v. Mihaly, supra), and upon the ability of litigants to foresee the coming change in the law (see Connor v. Great Western Sav. & Loan Assn. (1968) 69 Cal.2d 850, 869 [73 Cal. Rptr. 369, 447 P.2d 609].) Presumably attorneys do not commit malpractice in reliance upon the statute of limitations. Perhaps on occasion law partnerships may be formed or dissolved upon the assumption that claims of more than two years are barred by limitations, but ordinary prudence dictates that such an agreement provide in some manner for contingent or unexpected liabilities. Defendants deplore the danger of discarded written records, but we are confident that most attorneys retain their records for periods of longer than two years.[34]
*194 A change in the rule on accrual of legal malpractice actions could fairly have been foreseen by defendants and by the legal profession. In 1963, Griffith v. Zavlaris, supra, noted that the rule against accrual was "harsh" and at odds with the medical malpractice cases (215 Cal. App.2d at p. 830) and since that date criticism of the rule has been continuous. The application of the proper rule of limitation for attorneys should not be encased in a self-defeating prospectivity.
In summary, in our complex and inter-dependent society, human relations are ever being further fit into a framework of legal rights and responsibilities, and, in this process, the role of the lawyer has become increasingly crucial. As more individuals come to depend upon him, his responsibility must broaden and deepen. Today, then, is no time to perpetuate an anachronistic interpretation of the statute of limitations that permits the attorney to escape obligations which other professionals must bear. The legal calling can ill afford the preservation of a privileged protection against responsibility, a privilege born of error, subject to almost universal condemnation, and, in present-day society, anomalous.
(13b) We hold that a cause of action for legal malpractice does not accrue until the client discovers, or should discover, the facts establishing the elements of his cause of action.
The judgment of the superior court is reversed.
Wright, C.J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.
NOTES
[1] After our decision in Muskopf v. Corning Hospital Dist. (1961) 55 Cal.2d 211 [11 Cal. Rptr. 89, 359 P.2d 457], the Legislature temporarily suspended actions against public entities. (Stats. 1961, ch. 1404.) The deposition of Delaney suggests that he and defendants mistakenly thought this legislation prevented the filing or service of pleadings, overlooking our decision to the contrary in Corning Hospital Dist. v. Superior Court (1962) 57 Cal.2d 488 [20 Cal. Rptr. 621, 370 P.2d 325].
[2] Delaney on deposition acknowledged his negligence in failing to serve process, and admitted that throughout the year 1967 he was "dodging" an explanation to plaintiffs as to the reason why their suit was dismissed.
[3] See Estate of Kruger (1900) 130 Cal. 621, 626 [63 P. 31]; Lysick v. Walcom (1968) 258 Cal. App.2d 136, 147 [65 Cal. Rptr. 406, 28 A.L.R.3d 368]; Theobald v. Byers (1961) 193 Cal. App.2d 147, 150 [13 Cal. Rptr. 864, 87 A.L.R.2d 986]; see generally Leavitt, The Attorney as Defendant (1961) 13 Hastings L.J. 1, 23-32; Note (1963) 63 Colum.L.Rev. 1292, 1294-1302.
[4] See Eckert v. Schaal (1967) 251 Cal. App.2d 1, 5 [58 Cal. Rptr. 817]; Ishmael v. Millington (1966) 241 Cal. App.2d 520, 523 [50 Cal. Rptr. 592]; Modica v. Crist (1954) 129 Cal. App.2d 144, 146 [276 P.2d 614]; McGregor v. Wright (1931) 117 Cal. App. 186, 193 [3 P.2d 624]; cf. Heyer v. Flaig (1969) 70 Cal.2d 223, 232 [74 Cal. Rptr. 225, 449 P.2d 161].
[5] See Wilcox v. The Executors of Plummer (1830) 29 U.S. (4 Pet.) 172 [7 L.Ed. 821]; Benard v. Walkup (1969) 272 Cal. App.2d 595, 602-605 [77 Cal. Rptr. 544]; Floro v. Lawton (1960) 187 Cal. App.2d 657, 672-673 [10 Cal. Rptr. 98]; DeGarmo v. Luther T. Mayo, Inc. (1935) 4 Cal. App.2d 604 [41 P.2d 366].
[6] See Lucas v. Hamm (1961) 56 Cal.2d 583, 589, fn. 2 [15 Cal. Rptr. 821, 364 P.2d 685]; Wade, The Attorney's Liability for Negligence, in Professional Negligence (T. Roady & W. Anderson eds. 1960) pages 218-219; Note (1967) 15 U.C.L.A. L.Rev. 230, 239, fn. 41; Note (1963) 63 Colum.L.Rev. 1292, 1292-1294; Note, 15 Hastings L.J. (1964) 590, 590-597.
[7] Code of Civil Procedure section 339, subdivision 1, provides in part for a two-year limitation upon "An action upon a contract, obligation or liability not founded upon an instrument of writing...."
[8] Section 337, subdivision 1, provides a four-year limit for "An action upon any contract, obligation or liability founded upon an instrument in writing...."
[9] Section 340, subdivision 3, provides a one-year limit for "An action for libel, slander, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for the death of one caused by the wrongful act or neglect of another...."
[10] Section 338 provides a three-year limit for "2. An action for trespass upon or injury to real property. 3. An action for taking, detaining, or injuring any goods, or chattels, including actions for the specific recovery of personal property."
[11] Section 340.5, enacted in 1970, reads as follows: "In an action for injury or death against a physician or surgeon, dentist, registered nurse [various other medical or paramedical practitioners], or a licensed hospital as the employer of any such person, based upon such person's alleged professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, [the statute of limitations is] four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. This time limitation shall be tolled for any period during which such person has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him."
[12] See Lattin v. Gillette (1892) 95 Cal. 317, 319 [30 P. 545]; Italiani v. Metro-Goldwyn-Mayer Corp. (1941) 45 Cal. App.2d 464, 467 [114 P.2d 370]; Stark v. Pioneer Casualty Co. (1934) 139 Cal. App. 577, 582 [34 P.2d 731]; 2 Witkin, California Procedure (2d ed. 1970) page 1172; Note (1964) 15 Hastings L.J. 590, 596.
[13] Heyer v. Flaig (1969) 70 Cal.2d 223, 232, fn. 5 [74 Cal. Rptr. 225, 449 P.2d 161]; see Weaver v. Bank of America (1963) 59 Cal.2d 428, 432 [30 Cal. Rptr. 4, 380 P.2d 644]; Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 663 [328 P.2d 198].
[14] United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 596 [83 Cal. Rptr. 418, 463 P.2d 770]; Heyer v. Flaig (1969) 70 Cal.2d 223, 231 [74 Cal. Rptr. 225, 449 P.2d 161]; Alter v. Michael (1966) 64 Cal.2d 480, 483 [50 Cal. Rptr. 553, 413 P.2d 153].
[15] Chavez v. Carter (1967) 256 Cal. App.2d 577, 580 [64 Cal. Rptr. 350]; Eckert v. Schaal (1967) 251 Cal. App.2d 1, 5-6 [58 Cal. Rptr. 817]; Fazio v. Hayhurst (1966) 247 Cal. App.2d 200, 203 [55 Cal. Rptr. 370]; Shelly v. Hansen (1966) 244 Cal. App.2d 210, 213 [53 Cal. Rptr. 20]; Bustamante v. Haet (1963) 222 Cal. App.2d 413, 414-415 [35 Cal. Rptr. 176].
[16] Huysman v. Kirsch was the first decision in any state to utilize a date of discovery rule for the accrual of actions for medical malpractice. By 1960 five other states adopted a date of discovery rule; since 1960 fifteen other states have agreed, in many instances overruling former decisions which ran the limitation period from the negligent act. For a listing of the cases, see Annot. (1961) 80 A.L.R.2d 368, and A.L.R.2d Later Case Service (1968), supplementing 79-84 A.L.R.2d, at pp. 112-114 and (1971) Supp. at p. 31.
[17] In equity the courts have long followed the rule that an action against a trustee for breach of trust does not accrue until the beneficiary has notice of the breach. See Cortelyou v. Imperial Land Co. (1913) 166 Cal. 14, 20 [134 P. 981].
[18] See, in addition to authorities cited in text, Moonie v. Lynch (1967) 256 Cal. App.2d 361, 365 [64 Cal. Rptr. 55]; Sacks, Statutes of Limitation and Undisclosed Malpractice (1967) 16 Clev.-Mar.L.Rev. 65; Wallach & Kelly, Attorney Malpractice in California: A Shaky Citadel (1970) 10 Santa Clara Law. 257; Note (1967) 15 U.C.L.A. L.Rev. 230.
[19] This inconsistency is particularly glaring in the case of Yandell v. Baker (1968) 258 Cal. App.2d 308 [65 Cal. Rptr. 606]. A lawyer and a firm of certified public accountants jointly prepared a tax program for the client. The program became effective in June of 1962, but the client did not discover the defect in it until July 1963. He brought suit for malpractice against the attorney and the accountants in December 1964. The Court of Appeal held that since the action against the attorney accrued at the date of negligence, June of 1962, the action was barred by the statute of limitations. By implication, however, the action against the accountants did not accrue until July of 1963 (see Moonie v. Lynch (1967) 256 Cal. App.2d 361 [64 Cal. Rptr. 55]), and thus was not barred. Although the attorney and the accountants acted in concert, and are jointly liable, the attorney alone gets the benefit of the statute of limitations.
[20] See Howe v. Pioneer Mfg. Co. (1968) 262 Cal. App.2d 330, 340 [68 Cal. Rptr. 617]; Rubino v. Utah Canning Co. (1954) 123 Cal. App.2d 18, 27 [266 P.2d 163]. For a discussion of the various exceptions to this rule, see Warrington v. Charles Pfizer & Co. (1969) 274 Cal. App.2d 564, 567-570 [80 Cal. Rptr. 130].
[21] "[O]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement Second of Torts, section 299A; for the standard of care for physicians, see Trindle v. Wheeler (1943) 23 Cal.2d 330, 333 [143 P.2d 932]; for the standard of care for attorneys, see authorities cited in footnote 3, supra.
[22] See Restatement Second of Torts, section 299A comment d; McCoid, The Care Required of Medical Practitioners (1959) 12 Vand.L.Rev. 549, 566; Note (1963) 63 Colum.L.Rev. 1292, 1302-1304. California imposes this higher standard of care upon physicians with a specialized practice (Quintal v. Laurel Grove Hospital (1964) 62 Cal.2d 154, 159-160 [41 Cal. Rptr. 577, 397 P.2d 161]; Sansom v. Ross-Loos Medical Group (1945) 57 Cal. App.2d 549, 555-556 [134 P.2d 927]; but no cases have decided the standard of care for an attorney with a specialized practice. See Note (1964) 15 Hastings L.J. 584, 588-589.
[23] See Note (1967) U.C.L.A.L.Rev. 230, 234-235.
[24] See United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 596 [83 Cal. Rptr. 418, 463 P.2d 770] (listing professions in which a fiduciary duty has been imposed); Cox v. Delmas (1893) 99 Cal. 104, 123 [33 P. 836] (attorney-client relationship as fiduciary); Berkey v. Anderson (1969) 1 Cal. App.3d 790, 805 [82 Cal. Rptr. 67] (physician-patient relationship as fiduciary).
[25] See, e.g., United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 596-598 [83 Cal. Rptr. 418, 463 P.2d 770] (insurance agent); Stafford v. Schultz (1954) 42 Cal.2d 767, 777-778 [270 P.2d 1] (doctor).
[26] Many cases have discussed the impact of a continuing attorney-client relationship upon the statute of limitations; generally these cases agree that whenever the error is remediable a continuing relationship implies a continuing duty to remedy the error and thus extends the period of limitation (Heyer v. Flaig (1969) 70 Cal.2d 223, 230 [74 Cal. Rptr. 225, 449 P.2d 161]; Fazio v. Hayhurst (1966) 247 Cal. App.2d 200, 203 [55 Cal. Rptr. 370]), but the period is not extended when the negligence is irremediable (Tuck v. Thuesen (1970) 10 Cal. App.3d 193, 198 [88 Cal. Rptr. 759]; Eckert v. Schaal (1967) 251 Cal. App.2d 1, 6 [58 Cal. Rptr. 817]). Tuck v. Thuesen, supra, suggests that since the client's reliance upon his attorney ceases once the attorney-client relationship terminates, the period of limitation should run from that date. We conclude, however, that an action for malpractice does not accrue until the client discovers, or should discover, his cause of action; under this standard, termination of the attorney-client relationship is relevant only to the extent that the client, aided by disclosures from the former attorney or the investigations of new counsel, acquires the essential information.
[27] Accord: Clark v. Millsap (1926) 197 Cal. 765, 783 [242 P. 918]; Green v. MacAdam (1959) 175 Cal. App.2d 481, 487 [346 P.2d 474].
[28] In 1969 the Maryland Court of Appeals became the first court to apply a date of discovery rule to actions for legal malpractice. (Mumford v. Staton, Whaley & Price (1969) 254 Md. 697 [255 A.2d 359].) Noting that it had held that malpractice actions against doctors and surveyors did not accrue until discovery, the court concluded that "we cannot ... make favored litigants of attorneys by applying a less stringent rule to members of the legal profession than to doctors or surveyors." (255 A.2d at p. 367.) For a listing of cases of other jurisdictions, see Annot. (1968) 18 A.L.R.3d 978.
[29] Yandell v. Baker (1968) 258 Cal. App.2d 308 [65 Cal. Rptr. 606]; Eckert v. Schaal (1967) 251 Cal. App.2d 1 [58 Cal. Rptr. 817]; and Griffith v. Zavlaris (1963) 215 Cal. App.2d 826 [30 Cal. Rptr. 517], are disapproved. We also disapprove language in the following cases to the extent that it is inconsistent with this opinion: Alter v. Michael (1966) 64 Cal.2d 480 [50 Cal. Rptr. 553, 413 P.2d 153]; Tuck v. Thuesen (1970) 10 Cal. App.3d 193 [88 Cal. Rptr. 759]; Chavez v. Carter (1967) 256 Cal. App.2d 557 [64 Cal. Rptr. 350]; Fazio v. Hayhurst (1966) 247 Cal. App.2d 200 [55 Cal. Rptr. 370]; Shelly v. Hansen (1966) 244 Cal. App.2d 210 [53 Cal. Rptr. 20]; Bustamante v. Haet (1963) 222 Cal. App.2d 413 [35 Cal. Rptr. 176]; DeGarmo v. Luther T. Mayo, Inc. (1935) 4 Cal. App.2d 604 [41 P.2d 366]; Jensen v. Sprigg (1927) 84 Cal. App. 519 [258 P. 683]. We do not believe it necessary to disapprove expressly the many cases, not involving legal malpractice, which have mentioned in passing or by way of illustration the supposed rule that in actions for legal malpractice the period of limitation runs before discovery.
[30] Code of Civil Procedure section 312 states that "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." The section does not define that point at which the cause of action accrues.
[31] In contrast, the holding that actions for legal malpractice fall under section 339 of the Code of Civil Procedure, and not section 340, dates at least to Jensen v. Sprigg (1927) 84 Cal. App. 519, 522 [258 P. 683].
[32] The history of the statute of limitation on medical malpractice is instructive. In 1931, the Court of Appeal held that the period of limitation ran from the negligent act despite the plaintiff's justifiable ignorance of her cause of action. (Gum v. Allen (1931) 119 Cal. App. 293, 295 [6 P.2d 311].) The Legislature took no action to overturn this rule. In 1936, we adopted the rule that the cause of action does not accrue until discovery. (Huysman v. Kirsch (1936) 6 Cal.2d 302, 312 [57 P.2d 908].) Legislative inaction continued for 34 years, until 1970 when the Legislature enacted section 340.5. That enactment adopted a compromise position, approving the discovery rule but imposing a four-year maximum limit.

This history demonstrates the difficulties of inferring intent from legislative inaction. If the court in 1936 had reasoned that legislative inaction demonstrated legislative approval of Gum v. Allen, we might still be following the rule against delayed accrual in medical malpractice cases.
[33] To the extent that legal malpractice consists of errors in the drafting and filing of documents, the danger that evidence may be lost or distorted over the years following the negligent act is less in legal malpractice cases than in medical malpractice actions. (See Note (1967) 15 U.C.L.A.L.Rev. 230, 236, fn. 27.)
[34] Defendants allege that, in reliance on the former rule, they choose to defend the present action themselves instead of turning it over to their malpractice insurer. This decision partakes of a calculated risk; defendants were not only aware of the danger that an appellate court might depart from prior precedent but also of the possibility that even under the former rule a court might find that Delany's misrepresentation estopped defendants from raising the statute of limitations.