Filed 3/15/23  Yaghobyan v. Romero CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HASMIK YAGHOBYAN, | B312738 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC704116) |
| v. | |
| ALAN ROMERO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Affirmed.

Law Offices of Reshma Kamath and Reshma Kamath for Plaintiff and Appellant.

Alan Romero, in pro. per., and for Defendant and Respondent Romero Law, APC.

━━━━━━━━━━━━━━━━━━

Respondents Alan Romero, an attorney, and Romero Law, APC (collectively, Romero) represented appellant Hasmik Yaghobyan and her three adult children in an action against several public entities in 2013. After Romero substituted out of that action, he sued Yaghobyan for unpaid costs and fees and obtained a default judgment against her. Yaghobyan then filed the present action against Romero for a variety of causes of action based on Romero's alleged professional negligence in his handling of her 2013 case. The trial court granted Romero's motion for judgment on the pleadings, finding that the judgment for Romero in the fee action precluded Yaghobyan's present claims.

Yaghobyan contends the trial court erred in granting the motion for judgment on the pleadings because the fee action and the present action are based on different legal theories, and thus the fee action did not preclude the present one. We find no error, and thus we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The prior fee action.

In 2013, Yaghobyan and her three adult children retained Romero to represent them in an action against the Simi Valley Police Department and others (the Simi Valley action). The parties executed a written retainer agreement in which Romero represented that he would "deliver the best possible legal services in a timely fashion and at a reasonable price," and Yaghobyan agreed to pay Romero's fees and costs. Romero substituted out of the Simi Valley action in September 2013.

In August 2015, Romero filed a complaint against Yaghobyan and her children for breach of contract and account

2

stated (case No. BC591638) seeking unpaid legal fees and costs incurred in the Simi Valley action. In October 2015, defaults were entered against Yaghobyan's children, and in December 2016, Romero dismissed Yaghobyan without prejudice, apparently because she was then in bankruptcy proceedings. In March 2017, the court entered default judgments against Yaghobyan's children.

In January 2018, Romero filed a new action for breach of contract and account stated against Yaghobyan (case No. EC067715). The complaint alleged Yaghobyan and Romero had entered into a written retainer agreement pursuant to which Romero agreed to pursue legal action for Yaghobyan, and Yaghobyan agreed to advance litigation costs and pay Romero an hourly rate for legal services. The complaint further alleged that Romero had "performed all the acts, services, and conditions required by [the retainer agreement] to be performed on its part," and "all the conditions that were required for [Yaghobyan's] performance occurred and were not excused." Accordingly, Romero was entitled to recover "the reasonable value of [his] services," plus "costs and expenses [incurred] on behalf of [Yaghobyan] in the sum of $39,443.66."

Yaghobyan did not file an answer to the complaint. Accordingly, the court entered Yaghobyan's default in May 2018, and entered a default judgment of $59,193.60 against her in June 2018.[1]

---

[1] Yaghobyan has not included in the appellate record Romero's declaration pursuant to Code of Civil Procedure section 585, subdivision (d) in support of the default judgment, and thus we do not know precisely how the trial court calculated

3

In July 2018, the court ordered case Nos. BC591638 and EC067715 related, and it designated case No. BC591638 the lead case.

## II.    The present malpractice action.

Yaghobyan and her children filed the present action against Romero in April 2018, and filed the operative first amended complaint (FAC) in May 2019.[2]  The FAC alleged that Yaghobyan retained Romero to represent her and her children in the Simi Valley action, but Romero performed "negligently and carelessly."  Specifically, Romero did not seek appropriate discovery, failed to review the FAC before filing it with the court, and did not correct the trial court's error in dismissing Glendale and the Glendale Police Department.  As a result, Yaghobyan ended the relationship with Romero in September 2013, but she "never recovered from Romero's mistakes and carelessness."

Yaghobyan alleged that Romero's conduct gave rise to six causes of action:

(1)    Breach of contract—Romero breached the retainer agreement by failing "to perform all legal services which were required to represent [Yaghobyan's] interest in compliance with the standard and duty of care."

the amount of the judgment.  However, the judgment appears to represent the amount of Romero's costs pled in the complaint ($39,443) plus about five years of prejudgment interest at the statutory rate of 10 percent per year.  ($39,443 + ($39,443 x .1 x 5) = $39,443 + $19,721 = $59,164.)

[2]    Yaghobyan's children were plaintiffs below but are not parties to this appeal.

(2) Professional negligence—Romero breached his duty of care "by failing to discharge same in compliance with the standard as duty of care like professionals under like circumstances [*sic*]."

(3) Fraud—Romero "owed a duty to [Yaghobyan] to investigate, inquire, inspect, research and learn the material facts that might affect [Yaghobyan's] decision in [her lawsuit]," but he "failed to do so and then deceived [Yaghobyan] as to same."

(4) Negligence—Romero committed acts of negligence by "negligently making false representations to [Yaghobyan] or failing to verify the representations made to [Yaghobyan]," which was "below the standard of care for an attorney[]."

(5) Unjust enrichment—Romero "failed to perform and breached" the retainer agreement, but nonetheless obtained judgments for more than $50,000 against Yaghobyan and her children.

(6) Defamation—Romero "portrayed [Yaghobyan] as a liar and a fraudster in public," including in his court filings and emails.

In September 2020, Romero moved for judgment on the pleadings. He asserted that the default judgment entered in the fee action against Yaghobyan conclusively established that he "performed all the acts, services, and conditions required by the contract" and "rendered legal services in accordance, and in compliance, with, the fee agreement." Yaghobyan could not relitigate these issues in the present action, and thus she could not prevail on her first five causes of action, all of which arose out of the legal services contract. Yaghobyan also could not prevail on her sixth cause of action for defamation because all of

5

Romero's allegedly defamatory statements were made in court or in court filings, and thus were subject to the litigation privilege.

Yaghobyan opposed the motion for judgment on the pleadings. She asserted that Romero was judicially estopped from asserting issue preclusion, and she was not relitigating any previously litigated claims or issues because her claims for breach of contract, fraud, negligence, and professional negligence were based on breach of an oral agreement and were supported by conduct that occurred after the default judgment was entered.

The trial court granted the motion for judgment on the pleadings. It noted that issue preclusion bars relitigation of an issue "identical to one presented in a prior proceeding, which was actually litigated, necessarily decided, and which resulted in judgment on the merits." Although nothing is " 'actually litigated' " when a judgment is by default, "a longstanding rule holds that a default judgment is 'as conclusive as to the issues tendered by the complaint as if it had been rendered after answer filed and trial had on allegations denied by the answer.' " Romero alleged in the fee action that he performed all services required by the legal services contract, thus precluding Yaghobyan's litigation of his alleged breaches of the duty of care in that same representation as asserted in the first five causes of action. Further, Yaghobyan's contention that the issues she hoped to litigate in this action were not raised in Romero's fee action "is false. The FAC's claims of breach of contract, fraud, and professional and general negligence arise from Romero's alleged representations by which he induced Yaghobyan to enter into the agreement that formed the basis for the prior action, [so] the judgment of the prior action is conclusive as to the existence and validity of the agreement. Likewise, Yaghobyan's claims

6

that Romero failed to perform his professional obligations as promised under the agreement are barred by the conclusive determination in the prior action that Romero performed all obligations under the agreement."

The court concluded, finally, that the litigation privilege barred Yaghobyan's sixth cause of action for defamation. It explained: "Statements offered in motions, pleadings, and court proceedings are absolutely privileged . . . . Moreover, the statements to others that Yaghobyan alleges are made to those who have signed the proofs of service in this case. [Citation.] Indeed, in Yaghobyan's motion for leave to file an amended complaint, she admits that the defamatory statements are Romero's statements to these third parties alleging that Yaghobyan is forging their signatures on proofs of service. [Citation.] These are communications in a judicial proceeding to those involved[,] designed to achieve the objects of the litigation that have a connection with the action. Yaghobyan offers no argument in opposition challenging Romero's contentions on this point."

The court entered judgment for Romero on February 8, 2021, and notice of entry of judgment was served on February 11, 2021. Yaghobyan timely appealed.

## DISCUSSION

### I. Standard of review.

" 'Because a motion for judgment on the pleadings is similar to a general demurrer, the standard of review is the same.' (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.) Thus, '[w]e independently review the trial court's ruling on a motion for judgment on the pleadings to determine

7

whether the complaint states a cause of action. [Citation.] In doing so, we accept as true the plaintiff's factual allegations and construe them liberally. [Citation.] If the trial court's ruling on a motion for judgment on the pleadings is correct upon any theory of law applicable to the case, we will affirm it." (*Tukes v. Richard* (2022) 81 Cal.App.5th 1, 18–19; see also *Towery v. State of California* (2017) 14 Cal.App.5th 226, 231 [same].)

## II. The trial court properly granted Romero's motion for judgment on the pleadings.

Yaghobyan contends that the trial court erred by concluding that Romero's default judgment in the prior action precluded Yaghobyan's claims here. For the reasons that follow, Yaghobyan's contention lacks merit.[3]

### A. Legal principles.

The law of preclusion is designed to ensure that a dispute resolved in one case is not relitigated in a later case. (*Samara v. Matar* (2018) 5 Cal.5th 322, 326 (*Samara*).) There are two forms of preclusion: claim preclusion and issue preclusion. (*Id.* at p. 326 & fn. 1.) Claim preclusion prevents relitigation of entire causes of action (*id.* at p. 326), while issue preclusion prevents " 'relitigation of previously decided issues' " (*id.* at p. 327). As relevant here, issue preclusion applies: (1) after a final judgment

---

[3]     Yaghobyan makes no claims of error as to the sixth cause of action for defamation, and thus any such claim is forfeited. (See, e.g., *People v. Sorden* (2021) 65 Cal.App.5th 582, 603 [appellant's failure to present reasoned argument and legal authorities in support forfeits issue on appeal]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [same].) We therefore will address on the merits only the first through fifth causes of action.

8

on the merits (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party. (*Id.* at p. 327, citing *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

An issue was "actually litigated" for purposes of issue preclusion "if it was properly raised, submitted for determination, and decided in the prior proceeding," even if "some factual matters or legal theories that could have been presented with respect to that issue were not presented." (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1042.) An issue was "necessarily decided" if it was not " ' "entirely unnecessary" ' " to the judgment in the initial proceeding." (*Samara, supra,* 5 Cal.5th at p. 327, citing *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.)

California accords preclusive effect to default judgments. (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823 [" '[a] judgment by default is said to "confess" the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of the matters well pleaded in the complaint. The judgment is, in consequence, res judicata on the issue of the right to the relief awarded' "], italics omitted; *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 149 (*Gottlieb*) [California "accords collateral estoppel effect to default judgments"]; *In re Williams' Estate* (1950) 36 Cal.2d 289, 293 [" 'A default judgment is an estoppel as to all issues necessarily litigated therein and determined thereby exactly like any other judgment' "].) Although nothing is "actually litigated" prior to entry of default judgment, a default judgment " ' "conclusively establishes, between the parties so far

9

as subsequent proceedings on a different cause of action are concerned, the truth of *all material allegations contained in the complaint* in the first action, and every fact necessary to uphold the default judgment; but such judgment is not conclusive as to any defense or issue which was not raised and is not necessary to uphold the judgment." ' " (*Gottlieb*, at p. 149, italics added, quoting *Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1380.)

### B. Analysis.

Romero's complaint in the fee action against Yaghobyan alleged that Romero and Yaghobyan entered into a written retainer agreement in which Romero agreed to represent Yaghobyan in a lawsuit, and that Romero "performed all the acts, services, and conditions required by the contract to be performed on [his] part." The complaint further alleged that "all the conditions that were required for [Yaghobyan's] performance occurred and were not excused," but that Yaghobyan "has not paid any part" of the fees and costs due to Romero. The entry of the default judgment " ' "conclusively establishe[d]" ' " the truth of these allegations (*Gottlieb*, *supra*, 141 Cal.App.4th at p. 149), and thus it is established for purposes of the present action that Romero "performed all the acts, services, and conditions required by the [retainer agreement] to be performed on [his] part," that "all the conditions that were required for [Yaghobyan's] performance occurred and were not excused," and that Yaghobyan breached the retainer agreement by failing to pay Romero's fees and costs.

These findings preclude Yaghobyan's first and fifth causes of action. The first cause of action for breach of contract alleges that Yaghobyan "performed all obligations under [the retainer

10

agreement," but that Romero breached the retainer agreement by "[f]ailing to act competently as legal counsel for [Yaghobyan]." The fifth cause of action for unjust enrichment similarly alleges that Romero obtained judgment against Yaghobyan for more than $50,000 even though he "failed to perform and breached the" retainer agreement. These allegations are manifestly inconsistent with the facts established by the judgment in the fee case—that is, that Romero fully performed under the retainer agreement, but that Yaghobyan failed to do so—and thus the trial court properly concluded that Yaghobyan could not state a claim for breach of contract or unjust enrichment.

The judgment in the fee case also precludes the second, third, and fourth causes of action (professional negligence, fraud, and negligence). Each of these causes of action sounds in professional negligence, alleging that Romero "breached [his] duty of care" by failing to act as a "[competent] professional" (second cause of action), breached his duty to "investigate, inquire, inspect, research and learn the material facts that might affect [Yaghobyan's] decision in [the Simi Valley action]" (third cause of action), and acted "below the standard of care for an attorney[]" (fourth cause of action). Each of these causes of action, therefore, depends on Yaghobyan's ability to prove that Romero failed to act as a competent attorney in his representation of Yaghobyan.

The findings in the fee action that Romero performed all of the acts required of him in his representation of Yaghobyan precludes Yaghobyan's second through fourth causes of action. Implicit in every contract for legal services is a promise to exercise appropriate professional skill and care. As our Supreme Court has explained: "Since in the usual case, the attorney

11

undertakes to perform his duties pursuant to a contract with the client, the attorney's failure to exercise the requisite skill and care is also a breach of an express or implied term of that contract. Thus legal malpractice generally constitutes both a tort and a breach of contract." (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 181 fns. omitted (*Neel*); see also *GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1250 [quoting *Neel*]; *Jackson v. Rogers & Wells* (1989) 210 Cal.App.3d 336, 342 [same].)

Because every legal services contract contains an implicit promise to exercise appropriate professional skill and care, the finding in the fee action that Romero performed all the acts, services, and conditions required by the retainer agreement necessarily includes a finding that he performed all required legal services with the requisite skill and care. This finding is conclusive in the present action, and thus it is dispositive of Yaghobyan's second, third, and fourth causes of action, each of which depend on finding that Romero acted below the standard of care. (See also *Akhlaghpour v. Orantes* (2022) 86 Cal.App.5th 232, 251 [bankruptcy court order granting attorney fee application for legal services provided by a client in bankruptcy precluded client's malpractice action arising out of the same legal services because "[t]he malpractice claim, like the earlier claim for fees, involves the acceptability of the legal services [the attorney] provided to [the client] in connection with her bankruptcy proceedings"]; *Chavez v. Carter* (1967) 256 Cal.App.2d 577, 583, disapproved on another ground in *Neel*, *supra*, 6 Cal.3d at p. 190, fn. 29 [client's malpractice action against former attorney was barred by attorney's prior fee action with respect to damages that accrued prior to filing of attorney's

12

action]; *Black v. Dillon* (1963) 213 Cal.App.2d 295, 295–296 [patient's medical malpractice action against her physician precluded his subsequent action against her for unpaid bills].)

Yaghobyan asserts "the issue of performance or non-performance, which may give rise to a breach of contract, is distinct and fundamentally different from the negligence of the party's performance, which may give rise to a tort." Yaghobyan is right in part: Contract and tort claims unquestionably arise out of distinct legal theories and have different elements. The relevant question for us, however, is not whether there are some differences between Romero's contract claims in the fee action and Yaghobyan's tort claims here, but rather whether any issues "necessarily decided" in the prior action preclude Yaghobyan's present claims. As discussed above, they do.

Yaghobyan next contends that issue preclusion does not bar the present action because she was dismissed from Romero's first fee action and thus was not a party to the judgment entered in that case. While it is true that Yaghobyan was not named in the March 2017 default judgment, that judgment was not the basis for the trial court's order granting the motion for judgment on the pleadings. Instead, the order was based on the June 2018 judgment, in which Yaghobyan *was* named as a party, and which therefore has preclusive effect as to her.

Yaghobyan also urges that issue preclusion does not bar her claims arising out of "separate obligations that were not raised in the pleadings and declarations where the default judgment was entered in the prior matter." Yaghobyan is correct that issue preclusion bars only those claims that were "actually litigated" in the fee action (*Bridgeford v. Pacific Health Corp.*, *supra*, 202 Cal.App.4th at p. 1042; *Akhlaghpour*, *supra*,

13

86 Cal.App.5th at p. 250), but she has not identified any claim in the present action that did not arise out of her 2013 retainer agreement with Romero. Any such contention, therefore, is forfeited. (See *People v. Sorden, supra*, 65 Cal.App.5th at p. 603; *Badie v. Bank of America, supra*, 67 Cal.App.4th at pp. 784–785.)

Finally, Yaghobyan contends that issue preclusion does not bar her present claims because her "breach of contract, fraud, negligence and professional negligence [claims] are based on the breach of [an] *oral* agreement." Not so. As we have discussed, each of these causes of action specifically asserts breaches of Romero's duties pursuant to a written retainer agreement (sometimes referred to in the FAC as "agreement #2"). These claims are precluded by the default judgment in the fee action, and thus the trial court properly granted the motion for judgment on the pleadings.

## III.  Yaghobyan's additional claims lack merit.

Yaghobyan asserts a number of additional claims; none has merit. She asserts, first, that the trial court erred in failing to adjudicate the merits of her claim for "ineffective assistance of counsel . . . under the Sixth Amendment of the United States Constitution." Yaghobyan has not alleged an ineffective assistance of counsel claim, and in any event, the constitutionally protected right to counsel "refer[s] specifically to *criminal* prosecutions, and hence do[es] not apply to civil proceedings." (*Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, 978–979, italics added; see also *Mendoza v. Superior Court* (2021) 65 Cal.App.5th 988, 1002 [ineffective assistance of counsel doctrine "applies in criminal, but not civil, cases"].) Accordingly, an ineffective assistance of counsel claim was not available to Yaghobyan in the present civil action.

14

Second, Yaghobyan asserts that the trial court erred in granting Romero's request to have Yaghobyan declared a vexatious litigant. Appellant's opening brief contains no legal citations in support of this assertion, and the appellate record does not contain all of the filings that were before the trial court when it ruled on the vexatious litigant motion. Accordingly, the contention is forfeited. (E.g., *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 (*Meridian*) ["The reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived."]; *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [it is appellant's burden to present an adequate record for review; " 'The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court [erred].' "].)

Third, Yaghobyan suggests that Romero's fee action against her should have been barred by the doctrine of issue preclusion because it was identical to Romero's earlier fee action against her children. This contention is facially without merit, but in any event it is not properly raised in the present action. Challenges to the judgment entered in the fee action against her had to be asserted *in that action*, and are not cognizable here. (E.g., *Meridian*, *supra*, 67 Cal.App.5th at p. 702 [alleged errors in a judgment generally are not subject to collateral attack in subsequent action in which issue or claim preclusion are asserted with respect to that judgment]; *City and County of San Francisco v. Stanley* (1994) 24 Cal.App.4th 1724, 1728–1729 [paternity judgment was res judicata in subsequent proceeding and could not be collaterally attacked].)

Fourth, Yaghobyan contends in her appellant's reply brief that the trial court abused its discretion by refusing to allow her to file a second amended complaint. Yaghobyan did not raise this issue in her opening brief, and thus we will treat it as forfeited. (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"]; *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500 [refusing to entertain an argument raised for the first time in a reply brief].) In any event, even were we to consider the issue on the merits, we cannot discern from appellant's reply brief what causes of action Yaghobyan wished to raise in a second amended complaint.

Finally, Yaghobyan urges that the trial court demonstrated ethnic bias against her by referring to her as an Armenian mother. Yaghobyan has not supported this claim with admissible evidence in the record, and thus we do not consider it on the merits.

For all the foregoing reasons, the trial court properly granted Romero's motion for judgment on the pleadings.

## DISPOSITION

The judgment is affirmed.  Romero and Romero Law, APC are awarded their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

NGUYGEN (KIM), J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17