[L. A. No. 2920.   In Bank.—August 20, 1913.]

JAMES G. CORTELYOU, as Administrator of the Estate of John G. Cortelyou, Deceased, Appellant, v. IMPERIAL LAND COMPANY (a Corporation), Respondent.

APPEAL FROM JUDGMENT—REVIEW OF EVIDENCE.—On an appeal from a judgment taken within sixty days after its rendition and entry, the sufficiency of the evidence to support the findings may be reviewed as effectually as upon an appeal from an order refusing a new trial. This is so where the appeal is taken under section 940 of the Code of Civil Procedure, as well as where it is taken under the new method prescribed by sections 941a, 941b, and 941c of that Code.

ID.—RECORD ON APPEAL—REPORTER'S TRANSCRIPT—BILL OF EXCEPTIONS. In preparing the record on appeal, whether it be taken under the old or the new method, the appellant may follow the method prescribed by section 953a of that code, which provides that the reporter's transcript, authenticated by the judge, shall be a part of the judgment-roll, and that it may be used on appeal instead of a bill of exceptions.

ID.—INSUFFICIENCY OF EVIDENCE TO SUSTAIN FINDINGS—SPECIFICATIONS OF PARTICULARS NOT NECESSARY IN REPORTER'S TRANSCRIPT.—As such transcript, in a civil case, is required to include all the evidence taken, there is no occasion that it should contain any specifications of particulars in which the evidence is alleged to be insufficient to support the findings, and the code does not require them to be inserted therein. The insufficiency of the evidence to sustain the findings may be urged on appeal without making or filing any specifications in the trial court.

CORPORATION—SUBSCRIPTION TO STOCK—SPECIFIC PERFORMANCE OF CONTRACT—STATUTE OF LIMITATIONS.—Where a written contract of subscription to the capital stock of a corporation provided that the certificate for the stock should be delivered to the subscriber upon his making full payment therefor, the right of action of the subscriber to specifically enforce the contract accrued immediately upon his making such payment, and became barred four years thereafter, under subdivision 1 of section 337 of the Code of Civil Procedure.

ID.—CONTRACT CONTEMPLATING POOLING OF STOCK.—A pooling agreement referred to in such contract, in accordance with which the stock was to be held and voted, would have been no defense to such an action, where no such agreement was in existence at the time of the contract, and no steps were ever taken to create the contemplated pool.

ID.—CERTIFICATE TO BE HELD BY CORPORATION AS TRUSTEE FOR SUBSCRIBER—BREACH OF TRUST BY CORPORATION KNOWN TO SUBSCRIBER. If, however, by mutual consent of the parties, the time of issuing the certificate was deferred indefinitely after the payment of the price either until such pool should be formed or until the certificate was demanded by the subscriber, so that an express trust arose between the subscriber and the company, whereby the company became trustee of the stock for him for an indefinite period which would be terminated by the formation of the pool and the issuance of the stock accordingly, or upon a demand by the subscriber for the stock, the statute of limitations applicable to an action to enforce the trust is section 343 of the Code of Civil Procedure, fixing four years as the period of limitations. In such a case, the statute did not begin to run until there had been a breach of the trust by the corporation which was known to the subscriber. The mere neglect

of the company to issue the certificate, or of the subscriber to demand or compel such issuance, did not set the statute in motion.

ID.—EVIDENCE OF REPUDIATION OF TRUST—KNOWLEDGE OF REPUDIATION BY FOREIGN ADMINISTRATOR—ACTION BARRED BY STATUTE OF LIMITATIONS.—In the present case the evidence is held sufficient to show that, more than five years before the commencement of the action, the corporation repudiated such trust relation by issuing and making various transfers of the certificates of stock in violation of the terms of the trust, and that such repudiation then became known to the plaintiff, who was a foreign administrator and one of the heirs of the subscriber, and that consequently, the action, if considered as one to enforce the trust, was barred by the statute of limitations.

ID.—NOTICE OF REPUDIATION SUFFICIENT TO START STATUTE.—After the death of such subscriber, who was a nonresident of this state, it was not necessary, in order to constitute a repudiation of the trust sufficient to start the statute of limitations, that notice of such repudiation should be brought home to some person who had capacity immediately to begin an action in this state to enforce the trust.

ID.—DUTY OF FOREIGN ADMINISTRATOR TO ENFORCE TRUST—NOTICE OF REPUDIATION—PROCURING ANCILLARY ADMINISTRATION—BRINGING ACTION BEFORE BAR OF STATUTE.—The domiciliary administrator of the estate of such subscriber had full power, and it was his duty, to accept performance of the trust, either in this state or elsewhere, and also to demand performance. If he was met with a failure or refusal, the breach of trust would be complete, and it would be his duty to take such steps as should be necessary to procure ancillary letters of administration in this state and bring the appropriate action before the statute of limitations had become a bar.

ID.—RUNNING OF STATUTE OF LIMITATIONS—DEATH OF PERSON HAVING VESTED RIGHT BEFORE BREACH—NO PERSON IN BEING CAPABLE OF MAINTAINING ACTION.—Where the person entitled to a right dies after the right vested but before a breach had made a cause of action thereon, the statute of limitations begins to run from the time of the breach, nowithstanding there is then no person in being capable of maintaining an action thereon.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

James P. Clark, and M. M. Meyers, for Appellant.

Edwin A. Meserve, Paul H. McPherrin, and A. H. Rose, for Respondent.

SHAW, J.—This is an action to establish the plaintiff's title to two hundred and fifty shares of the capital stock of the defendant corporation, alleged to have been purchased and paid for by plaintiff's intestate from said corporation; and to compel said corporation to issue to plaintiff a certificate for said shares, or, if it should turn out upon the trial that no shares are available which can be issued to plaintiff, then for the recovery of twenty-five thousand dollars, alleged to be the value thereof. The findings below were that the action was barred by section 337, subdivision 1; section 338, subdivisions 3 and 4; section 339, subdivision 1, and section 343 of the Code of Civil Procedure. Judgment was given accordingly. A motion for new trial was made by the plaintiff and denied by the court. Appeal was taken both from the judgment and order, within sixty days after the judgment was rendered and entered.

The main point in support of the appeal is that the evidence does not support the finding that the action is barred by the several statutes of limitation. Defendant claims that the court is precluded from a consideration of this point. This claim, as we understand it, is based on the theory that the evidence is not properly a part of the record on appeal and that, so far as the motion for new trial is concerned, it was not before the court below for consideration. We do not find it necessary to determine whether or not the sufficiency of the evidence could have been considered in the court below, or can be considered here, in connection with the motion for a new trial. The appeal having been taken from the judgment within sixty days after its rendition and entry, the sufficiency of the evidence to support the findings may be reviewed on that appeal, as effectually as upon the appeal from the order refusing a new trial. And this is so where the appeal is taken under section 940 of the Code of Civil Procedure, as well as where it is taken under the new method prescribed by sections 941a, 941b, and 941c of the Code of Civil Procedure.

The point that there is no bill of exceptions, and consequently no specifications of particulars in which the evidence is alleged to be insufficient, as required by section 648 of the Code of Civil Procedure, is of no force. The plaintiff proceeded under section 953a in preparing the record on appeal.

That method of preparing the record may be resorted to under either the old or the new method of taking the appeal. (*Lang* v. *Lilley etc. Co.,* 161 Cal. 295, [119 Pac. 100] ; *Smith* v. *Jaccard,* 20 Cal. App. 280, [128 Pac. 1026].) The section provides that the reporter's transcript, authenticated by the judge, shall be a part of the judgment-roll and may be used on appeal instead of a bill of exceptions. It does not require that specifications of the insufficiency of the evidence shall be made. In a bill of exceptions such specifications are required, not primarily for use on appeal, but for the information of the opposing party and the court below, so that they may be advised as to the matter that should be inserted in the bill. As the reporter's transcript in a civil case must include all the evidence taken, there is no occasion for any such specification and the code does not require them to be inserted therein. The points may be stated and urged in argument on appeal without making or filing any specifications in the trial court.

The plaintiff's intestate, John G. Cortelyou, on October 16, 1900, purchased the stock from S. W. Fergusson, upon a contract set forth in a receipt signed by Fergusson as general manager of the Imperial Land Company, as follows:

"Received of John G. Cortelyou the sum of one hundred dollars on account of sale to the payer of 250 shares of the capital stock of the Imperial Land Company, said stock to be held by George Chaffey, trustee, and voted in acordance with the pooling agreement entered into between the owners of the majority of the stock of said land company. The payer will, upon the payment of the further sum of twenty-four hundred (2,400.00) dollars, receive a copy of the certificate of stock with the pooling agreement printed on the back thereof. Said copy of said certificate to be in form so as to enable the holders thereof to transfer the same by indorsement thereon."

The pooling agreement had not then been made, as recited, and in fact none ever was made. Payment of the twenty-four hundred dollars was made by Cortelyou on December 4, 1900, but no certificate was issued at that time, nor was any copy delivered as provided. The par value of the two hundred and fifty shares was twenty-five thousand dollars. The stock so purchased was issued on February 14, 1901, in two certificates, one for fifty shares and the other for two hundred

shares, both in the name of S. W. Fergusson. During all this time and until his death, which occurred on July 10, 1901, Cortelyou was a resident of Nebraska. Shortly after his death his widow and the plaintiff, James G. Cortelyou, were appointed, respectively administratrix and administrator of his estate, by the circuit court of Douglas County, Nebraska. No administration was had in the California courts until February 6, 1905, when James G. Cortelyou was appointed administrator by the Los Angeles County superior court. In July, 1901, Fergusson resigned his position as general manager of the Imperial Land Company. On September 18, 1901, Fergusson, for a valuable consideration, sold and transferred to the California Development Company these certificates of stock, together with a number of other shares standing in his name, amounting to 1537 shares in all. On or about November 15, 1901, the California Development Company sold and transferred said stock to a company called the Delta Investment Company at ten dollars a share in exchange for shares of the Delta Company at one hundred dollars a share, in pursuance of a reorganization plan presently to be mentioned. On February 12, 1902, the Delta Company, for a valuable consideration, sold and transferred all of the shares of the Imperial Land Company, including those purchased by Cortelyou, to a syndicate composed of F. C. Paulin, H. C. Oakley, J. W. Oakley, A. H. Heber and a number of other persons, none of whom, except Heber, had any knowledge of the Cortelyou claim.

The defendant company, under the written contract of subscription evidenced by the receipt aforesaid, was under obligation to issue the certificates for the stock bought by Cortelyou immediately upon full payment therefor on December 4, 1900. (Civ. Code, sec. 323.) An action to enforce the issuance thereof could have been begun immediately by Cortelyou. The pooling agreement recited in the contract would have been no defense to such an action, for there was no such agreement and there is no evidence that any steps were being taken to create such pool. So far, therefore, as the present suit may be deemed to be an action simply for the specific performance of the written contract of subscription, the statute began to run on December 11, 1900, and it was barred four years thereafter. The present action was

begun on February 15, 1907. In that aspect of the case, it is clearly barred by subdivision 1 of section 337 of the Code of Civil Procedure.

The claim is, however, that by mutual consent, the time of issuing the certificate was deferred indefinitely after the payment of the price either until the pool should be formed or until the certificates were demanded by Cortelyou and that thereby an express trust arose between Cortelyou and the company, whereby the company became trustee of the stock for him for an indefinite period which would be terminated by the formation of the pool and the issuance of the stock accordingly, or upon a demand by Cortelyou for such stock. This was held to be the effect of the complaint upon a former appeal. (*Cortelyou* v. *Imperial Land Co.*, 156 Cal. 373, [104 Pac. 695].)

The statute of limitations applying to the case upon this theory is section 343 of the Code of Civil Procedure, fixing four years as the period of limitation for all actions not otherwise provided for in the code. (*Hecht* v. *Slaney*, 72 Cal. 366, [14 Pac. 88]; *Nougues* v. *Newlands*, 118 Cal. 106, [50 Pac. 386]; *Piller* v. *Southern Pacific Co.*, 52 Cal. 42; *Barker* v. *Hurley*, 132 Cal. 26, [63 Pac. 1071, 64 Pac. 480].) In such cases, the statute of limitations does not begin to run until there has been a known breach of the trust. An express trust of this nature, whether created by writing or implied from the circumstances, is not broken by mere lapse of time; there must be a repudiation of the trust by the trustee. "The statute begins to run against the trust 'as soon as it is openly disavowed by the trustee insisting upon an adverse right and interest which is clearly and unequivocally made known to the *cestui que trust.*'" (*Luco* v. *De Toro*, 91 Cal. 417, [27 Pac. 1085]; quoting from *Speidel* v. *Henrici*, 120 U. S. 377, [30 L. Ed. 718, 7 Sup. Ct. Rep. 610].) Mere neglect of the company to issue the certificate, or of Cortelyou to demand or compel such issuance, does not set the statute in motion. (*Scadden etc. Co.* v. *Scadden*, 121 Cal. 40, [53 Pac. 440].)

Even under this theory of the case, we think the finding of the court is supported by sufficient evidence. That there was an actual repudiation of the trust by the Imperial Land Company, is established beyond question. The issuance of the certificates to Fergusson, apparently as his own, instead

of to Chaffey, as trustee, as the contract provided, was a clear violation of the agreement and a breach of the trust. The sale by Fergusson to the California Development Company, on September 18, 1901, and the transfer of the stock by the company on its books to said Development Company in pursuance of said sale, again violated the agreement and the trust arising therefrom. The subsequent sales and transfers, first to the Delta Company and then to the Paulin syndicate, the latter including the entire capital stock of the Imperial Land Company, completely terminated the trust, as a matter of fact, and rendered it impossible for the company thereafter to specifically perform it. There was evidence tending to show that knowledge of this breach of the trust and repudiation of the obligation thereof was brought home to the plaintiff, at least as early as January, 1902. In November, 1901, the managers of the Imperial Land Company, finding that its affairs were in bad financial condition and the stock greatly depreciated, determined to form a new corporation to take over all the stock of the Imperial Company at an agreed rate and issue stock of the new corporation in exchange therefor, at par. For this purpose the Delta Investment Company was organized. Heber was the general manager of the Imperial Company at that time and he was made general manager of the Delta Company also. On October 8, 1901, as general manager of the Imperial Company, Heber wrote to James G. Cortelyou, stating that he had succeeded Fergusson as general manager, that the managers had found it necessary to make a change for the benefit of all those interested, explaining the plan to form a new corporation as aforesaid, and saying that "all the stock of the Imperial Land Company, except that which your deceased parent was entitled to, will be transferred to the Delta Investment Company on a basis of its cost for stock in the new company at par, which will entitle your father's estate to 25 shares of the new stock of the par value of $100 each." He inclosed a form of order to the Imperial Company to make the proposed exchange and requested that it be signed by the administrator, or all of the heirs, and returned. No answer was made to this communication by plaintiff or by the heirs. On November 15, 1901, Heber wrote to plaintiff, this time as general manager of the Delta Investment Company and upon its letter

head, addressing the letter to "Estate of John G. Cortelyou, care James G. Cortelyou," saying: "Inclosed herewith please find certificate of stock No. 97 for 25 shares in the Delta Investment Company, a corporation formed under the laws of the state of New Jersey, *which has taken over all the Imperial Land Company stock.* Under a prior arrangement with the deceased, you are entitled to the above number of shares, being on an equal basis with all other shareholdres in the original company. Please have signed the receipt appended to the certificate and return to us at your earliest convenience." (Italics ours.) On November 23, 1901, plaintiff returned this certificate to the Delta Investment Company with a letter saying that "there must be some mistake about this" and that he would be in Los Angeles in a short time and would then call and see about it. He called at the office of the Imperial Company in December following, saw Heber and talked with him. Heber exhibited the stock book of the Imperial Company, showing that almost all the other stock of the company had been turned in to the Delta Company, and tried to persuade Cortelyou to accept the twenty-five shares of Delta stock, but Cortelyou declined to do so. He then engaged an attorney to secure certificates of the two hundred and fifty shares in the Imperial Company to be issued to the Cortelyou estate. On January 2, 1902, the attorney made written demand on the Imperial Land Company, on behalf of the estate, for the execution and delivery of certificates for these shares. Heber, for the company, promised to take up the matter soon, but never did anything further in regard to it. A. M. Chaffey was a director of the Imperial Land Company and secretary of the Delta Investment Company in January, 1902, and until February 12, 1902. Some time in January he had an extended conversation with plaintiff about this stock. He explained all the circumstances in relation to it and told plaintiff that all of the stock of the Imperial Land Company had been issued to and was held by the Delta Investment Company and that the Delta Company claimed to own it all. From all these circumstances the court might reasonably infer that plaintiff must have known, at least after the conversation with Chaffey, that the Imperial Land Company had repudiated the trust relation, had converted the stock to its own use and had sold it to others free from any

claim of the Cortelyou estate.   This was more than five years before the present action was begun.   The finding is sustained by this evidence.

The plaintiff argues that in order to constitute a repudiation of the trust sufficient to start the statute of limitations, notice of such repudiation must be brought home to some person who has capacity immediately to begin an action to enforce such trust, that at the time this notice was imparted to James G. Cortelyou he was administrator only by grant of letters from the courts of Nebraska and that he did not have capacity as such to maintain an action in the courts of California; that California letters were not granted until February 6, 1905, and that consequently, the statute did not begin to run until that date.   We can see no just basis for this proposition.   James G. Cortelyou was a son and one of the heirs of John G. Cortelyou.   It appears from the evidence that he was acting on behalf of the heirs.   The title to the property vested in the heirs upon the death of the decedent ancestor.   As a foreign administrator he had full power to accept performance of the trust, either in this state or elsewhere, and also full power to demand performance. It was his duty to do so.   (*Estate of Ortiz,* 86 Cal. 314, ['21 Am. St. Rep. 44, 24 Pac. 1034].)   If he was met with a failure or refusal, the breach of trust would be complete and it would be his duty to take such steps as should be necessary to procure ancillary letters of administration in this state and bring the appropriate action before the statute of limitations had become a bar.   (Id; *McCully* v. *Cooper,* 114 Cal. 263, [55 Am. St. Rep. 66, 35 L. R. A. 492, 46 Pac. 82].)   The capacity to maintain an action is one thing; the power and duty to demand and accept performance of a trust running to his intestate is quite another.   We are aware of no decision or principle to the effect that no one may lawfully demand and receive performance unless he has immediate capacity to sue, if he is a person of full age and sound mind.   But however this may be as a general rule, there is no good reason for such a rule in favor of a foreign administrator who may immediately upon a breach obtain ancillary letters in this state, either general or special, and begin the action without delay.

It is suggested that the statute of limitations does not begin to run, where the cause of action accrues during a time when there is no person capable of maintaining an action thereon, until such time as there is a person in being who can sue. In a case similar to this, that is, where the person entitled to the right died after the right vested but before a breach had made a cause of action thereon, it was held that the period of limitation began to run from the time of the breach. It was there said: "If the cause of action does not accrue until after the death of the party who would have been entitled to sue, the persons interested in his estate—his creditors, heirs and devisees—have the full time allowed by statute in which to move in the matter to obtain a grant of administration and commence the action," and that as the statute made no exception postponing the running of the statute until the grant of letters in such cases, the courts could not inject such exception into the statute by interpretation. (*Tynan* v. *Walker*, 35 Cal. 636, 644, [95 Am. Dec. 152].) This case has been approved in several subsequent decisions and it must now be deemed to be the established rule in this state. (*Hibernia etc. Soc.* v. *Conlin*, 67 Cal. 180, [7 Pac. 477]; *Morrow* v. *Barker*, 119 Cal. 66, [51 Pac. 12]; *Dennis* v. *Bint*, 122 Cal. 46, [68 Am. St. Rep. 17, 54 Pac. 378].) The plaintiff had ample time within which to begin the action. Instead of proceeding to take out letters in this state, he began an action here as administrator under the grant of letters in Nebraska, and the action failed because as such he had no capacity to sue. No great diligence has been shown. That suit was begun in 1904, and practically ended in May, 1904. In 1905 the ancillary letters issued here. Yet two years elapsed before this action was begun.

There are no other points that require consideration.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.