[No. A059040. First Dist., Div. Two. Feb. 24, 1994.]

EVA DI GRAZIA, Plaintiff and Appellant, v.
PHILIP ANDERLINI, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through IV.

**COUNSEL**

Charles Bond & Associates, Siegfried Hesse and Robert P. Brorby for Defendant and Appellant.

Fotenos & Suttle and J. F. Fotenos for Plaintiff and Appellant.

## OPINION

**BENSON, J.**—Philip Anderlini (Anderlini), trustee of a testamentary trust, appeals from a judgment holding him liable to the beneficiary, Eva Di Grazia (DiGrazia), for breaching his duty to manage the trust property so as to ensure her income. He contends DiGrazia's action was barred by the statute of limitations, and that the damage award against him was not supported by the evidence and was improperly calculated. DiGrazia appeals from the same judgment on the ground the damages were inadequate. We vacate a portion of damage award, but in all other respects affirm the judgment.

### *Facts*

In 1978, Sergio Di Grazia owned Marina Joe's restaurant in San Francisco. Anderlini, an attorney, drafted Sergio Di Grazia's will. Under the will, Sergio Di Grazia left his restaurant to his nephew, Guido Lucchesi (Lucchesi),[1] half outright, the other half to be held in trust for the benefit of DiGrazia, who was to receive the income from the half-interest held in trust until she died or remarried, at which point that interest would revert to Lucchesi. Anderlini was named trustee. Under the express terms of the trust, the trustee was authorized to invade principal for DiGrazia's benefit, and had discretion to sell trust property.

Sergio Di Grazia died in 1981. By that time, Lucchesi had been working at the restaurant for almost 10 years, and had been told by Sergio Di Grazia that he would inherit it. The restaurant and the property connected with it was distributed to Lucchesi and the trust on January 3, 1983. Lucchesi managed the restaurant from that time on. During 1983, 1984, and 1985, the restaurant was profitable. However, from 1985 on, the restaurant consistently lost money until it was sold in 1991.

Before distribution of the estate, DiGrazia received a family allowance of $2,700 per month. In late 1982, Lucchesi petitioned for a modification of the family allowance and alleged that under the trust, DiGrazia would receive $3,777 per month as her half share of the restaurant income. Accordingly, Lucchesi requested termination of the family allowance. When the restaurant property was distributed to Lucchesi and Anderlini, the family allowance was terminated.

Following termination of the family allowance, the restaurant began making monthly payments directly to DiGrazia. The checks were signed by

---

[1]Barbara Lucchesi, Lucchesi's wife, was also named as a respondent below. We identify her separately from Guido Lucchesi only where necessary to an understanding of the facts.

Lucchesi. The majority of the payments were for $2,700, but never more than that. Anderlini never explained to DiGrazia how the payments were calculated. It was undisputed that the amount of the payments bore little if any relationship to the actual net income of the restaurant; for example, in 1983, the net income as reported for tax purposes was $70,958.65, but DiGrazia was paid only $13,700; in 1984, the net income was $76,126, and DiGrazia received $31,310; in 1985, the net income was $14,607, but DiGrazia received $32,400. In July 1986, the restaurant stopped paying any allowance.

It was undisputed that Anderlini took no part in any aspect of restaurant management. Before he was finally replaced as trustee in 1989, Anderlini had no separate bank account, books or records for the trust. Apart from accounting reports prepared by the restaurant accountant, Anderlini never obtained or prepared any written reports on trust activities for DiGrazia, nor did he submit any accounting or report to the probate court. When DiGrazia requested information about the restaurant, Anderlini refused and explained he was in charge of any interest she had in the restaurant. Anderlini believed he had no duty to take action to ensure the trust property produced income for DiGrazia.

In July 1986, when Anderlini was informed by Lucchesi's attorney that the restaurant would no longer make payments to DiGrazia, he did not protest or take any other action. He testified at trial that when DiGrazia called him to find out why the payments had stopped, he advised her to consult her own attorney because he believed he was subject to a conflict of interest. He also testified he had advised her to get her own counsel in 1982, when the petition for a family allowance was filed. Anderlini took no action to evaluate the trust's interest in the restaurant property, if any, nor did he make any demand or investigate the possibility of selling the restaurant.

In August 1986, after the restaurant stopped making payments to DiGrazia, she consulted Jettie Selvig, an attorney she knew. DiGrazia asked Selvig to see if she could get the trust payments started again and obtain a transfer of title of the family home.

Selvig spoke to Anderlini, to Lucchesi's attorney, and to Gino Cecchi, an attorney and accountant who had acted as attorney to the estate. Anderlini had asked Cecchi to investigate the restaurant's profitability. According to Selvig, they did not give her the material she needed to determine whether the restaurant had money to pay DiGrazia any support. On August 19, 1986, Selvig wrote to Anderlini, informed him she represented DiGrazia, and requested that he make arrangements to invade the principal of the trust if

necessary to provide support to DiGrazia. Selvig testified her intent at that point was to investigate and discover whether there had been any mismanagement of the trust. On September 9, she wrote to Cecchi and demanded he provide her with documents related to the trust, and threatened unspecified legal action if support payments to DiGrazia were not resumed. Cecchi testified Selvig had threatened some such action at their first meeting as well. On November 18, she wrote to Anderlini and accused him of "fail[ing] miserably" to carry out his duties as executor of the estate, and noted that as trustee, he had not provided for DiGrazia's support. Copies of Selvig's letters were sent to DiGrazia.

Selvig was unable to restore DiGrazia's payments. On June 11, 1987, Selvig wrote to DiGrazia and informed her she would no longer be able to represent her. Shortly before she sent DiGrazia that letter, she told DiGrazia she should take legal action to protect her interests.

DiGrazia testified she met with Anderlini and Selvig several times in late 1986. At the meeting in August, Anderlini told DiGrazia she did not have to worry, and that he would "take care of everything." In March 1987, DiGrazia wrote to Anderlini and, among other things, informed him that she believed he had failed to perform his duties under the trust by allowing misappropriation of income, permitting mismanagement of the restaurant business, and allowing the devaluation of trust assets. In the letter, she told Anderlini that she intended to fight him with "every possible legal means" available, and to hold him "personally liable" for the losses he had caused. Anderlini did not respond to the letter.

By stipulated order of December 23, 1988, Anderlini was replaced as trustee of the testamentary trust created for DiGrazia's benefit. On November 30, 1990, DiGrazia filed this action in the probate court in which she sought damages against Lucchesi and Anderlini for breach of fiduciary duty and breach of trust, requested appointment of a receiver, and sought other orders intended to preserve her rights. Before trial, Lucchesi settled with DiGrazia. Under the terms of the settlement, Lucchesi remained a respondent in the action, but DiGrazia agreed not to execute on any judgment entered against him. Pursuant to Code of Civil Procedure section 877.6, the court found the settlement was made in good faith, and ordered dissolution of the trust upon payment of the settlement to DiGrazia. Though it appears from the record that Anderlini was represented at the hearing to determine good faith, there is nothing which indicates what position if any he took in the proceedings.

After trial, the court found Lucchesi had breached his fiduciary duty as a partner of the trust in the restaurant enterprise, and that Anderlini had

breached his duties as trustee. The court found Lucchesi and Anderlini jointly and severally liable to DiGrazia for any loss in value to the trust and for any loss in profits to the trust resulting from Anderlini's breaches and ordered an accounting of losses. Under the court's order, the accounting was to take into consideration the salaries and benefits received by Guido and Barbara Lucchesi from the restaurant business between 1981 and 1989 (the year Anderlini was removed as trustee), and any diminution in the trust's partnership capital account caused by the allocation of partnership losses during the same period.

After receiving the accounting, the trial court held a hearing on damages. Based on argument and the testimony of the accountant who prepared the accounting, the court calculated the damage award as follows.[2] The court found the total amount of unauthorized expenditure on the Lucchesis' salary and expenses was $279,377. The court then reduced that amount by $28,550 to account for the period during which Anderlini was no longer trustee, subtracted operating losses totalling $48,175 for 1987 and 1988, the two years in which the accounting report showed such losses, and subtracted another $3,210 which the court found was properly charged as an expense to the restaurant for those two years, leaving $199,442 as the final figure representing the losses to the partnership resulting from the improper payments to and on behalf of the Lucchesis. The court then awarded half that amount to DiGrazia as the portion allocable to the trust interest in the partnership, and added to that $27,087 for diminution to the trust's partnership capital account, for a total damage award to DiGrazia of $126,808. That award was reduced by a $114,500 credit resulting from the Lucchesis' pretrial good faith settlement with DiGrazia, leaving $12,308. At the conclusion of the hearing, the court directed calculation of prejudgment and postjudgment interest on that amount. The final judgment after that calculation was for $76,281 in DiGrazia's favor. Anderlini and DiGrazia both appeal from the judgment.

---

[2] Though Anderlini requested a statement of decision on damages, none was issued. Apart from the judgment itself, there is no order of the court reflecting its final calculation of damages. Our record of the court's calculation of damages is limited to the oral proceedings at the hearing, and our conclusions regarding its findings are accordingly guided by the court's remarks. However, we are not bound by its stated positions on subsidiary issues. As in any case where no statement of decision was requested or issued, we will imply all factual findings necessary to support the judgment, so long as they are supported by substantial evidence.

*Discussion*

I.

*Statutes of Limitation*

 There are two limitations periods potentially applicable to the claims against Anderlini; first, the three-year limitations period on claims made by beneficiaries against trustees of express trusts (Prob. Code, § 16460)[3] and second, the four-year statute applicable to breaches of fiduciary duty in general (Code Civ. Proc., § 343). Anderlini argues DiGrazia's claims against him are barred under either. The trial court concluded that neither statute barred DiGrazia's claim. We find the three-year statute did not apply, and that substantial evidence supported the trial court's implicit conclusion the four-year statute did not begin to run until after November 1986, rendering DiGrazia's action timely.

Anderlini argues that under section 16460, the three-year limitations period began to run when DiGrazia received an income and expense report from the restaurant accountant in early October 1986. His claim is based on that part of the statute providing that the limitations period begins to run on receipt of a "written report" which "adequately discloses the existence of a claim against the trustee for breach of trust," by providing "sufficient information so that the beneficiary knows of the claim or reasonably should have inquired into the existence of the claim." (§ 16460, subd. (a)(1).) In the alternative, Anderlini claims the three-year statute in any event had begun to run by March 1987, based on DiGrazia's letter to him in that month in which she accused him of a breach of trust, and informed him of her intent to pursue legal remedies against him. In response, DiGrazia argues that under long-established decisional law, " 'mere neglect' " does not trigger the running of the statute of limitations on an action against the trustee of an

---

[3]Unless otherwise indicated, all further statutory references are to the Probate Code.

The original version of section 16040 enacted in 1986 was repealed in 1990, and a new section 16040 was enacted. (Stats. 1990, ch. 79, § 14.) The portions of the statute with which we are concerned were not changed by the repeal and reenactment. The relevant portion of section 16460 reads as follows: "(a) Unless a claim is previously barred by adjudication, consent, limitation, or otherwise: [¶] (1) If a beneficiary has received an interim or final account in writing, or other written report, that adequately discloses the existence of a claim against the trustee for breach of trust, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after the receipt of the account or report. An account or report adequately discloses existence of a claim if it provides sufficient information so that the beneficiary knows of the claim or reasonably should have inquired into the existence of the claim. [¶] (2) If an interim or final account or other report does not adequately disclose the existence of a claim against the trustee for breach of trust, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after beneficiary discovered, or reasonably should have discovered, the subject of the claim."

express trust; rather, " '. . . there must be a repudiation of the trust by the trustee.' " (*Oeth* v. *Mason* (1967) 247 Cal.App.2d 805, 812 [56 Cal.Rptr. 69], quoting *Cortelyou* v. *Imperial Land Co.* (1913) 166 Cal. 14, 20 [134 P. 981].) DiGrazia reasons that the income and expense analysis was not a "report" within the meaning of the statute, that none of Anderlini's actions or failures to act amounted to more than neglect, and therefore that the statute did not begin to run until Anderlini was removed as trustee in 1988.

These contentions directly raise the question whether the enactment of section 16460 effected a change not only in the duration of the statute of limitations on actions by beneficiaries against trustees of express trusts, but also in the events which trigger the running of the statute. It appears the question is of first impression.

Apart from section 16460, we have found no authority and are referred to none supporting the proposition that the statute of limitations begins to run against a beneficiary of an express trust who has notice of facts which would cause a reasonable person to inquire into the trustee's activities.[4] To the contrary, California courts have followed the generally held view that the limitations periods on actions against trustees of express trusts do not begin to run absent the beneficiary's actual knowledge of some unequivocal act in violation of duties of the trustee or in repudiation of the trust. (See, e.g., *Estate of de Laveaga* (1958) 50 Cal.2d 480, 487 [326 P.2d 129] [trustee's failure to account or make proper allocations was not a "entire repudiation" and did not trigger statute]; *Berniker* v. *Berniker* (1947) 30 Cal.2d 439, 447-448 [182 P.2d 557] [statute does not begin to run absent repudiation or refusal to account on demand]; *England* v. *Winslow* (1925) 196 Cal. 260, 271 [237 P. 542] [noting that "the authorities are uniform" on the question]; *Cortelyou* v. *Imperial Land Co., supra*, 166 Cal. at p. 20 [statute does not run absent "known breach of trust"]; *Title Ins. and Trust Co.* v. *Ingersoll* (1910) 158 Cal. 474, 486 [111 P. 360] [statute does not run absent "a repudiation of the trust" or an act which "amounts to a violation of the trust"]; *Hearst* v. *Pujol* (1872) 44 Cal. 230, 236; *National Automobile & Cas. Ins. Co.* v. *Pitchess* (1973) 35 Cal.App.3d 62, 65 [110 Cal.Rptr. 649] [accrual of cause of action requires repudiation, not "a mere anticipatory breach"]; *Oeth* v. *Mason, supra*, 247 Cal.App.2d at p. 812 [statute begins to run only on repudiation or on trustee's refusal to account]; and see generally, 3 Witkin, Cal. Procedure (3d ed. 1985) § 469, p. 498 [on "knowledge or notice of

---

[4]This rule contrasts with the general rule applicable to causes of action involving the breach of a fiduciary relationship, under which a plaintiff's cause of action may be barred not because he or she had actual knowledge of the breach, but because he or she had knowledge of facts which would have led a reasonable person to inquire. (See, e.g., *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 827 [195 Cal.Rptr. 421].)

repudiation of the trust or of the act constituting the breach"]; 43 Cal.Jur.3d, Limitations of Actions, § 112, pp. 156-159 [unequivocally stating that statute does not begin to run absent notice to beneficiary of express repudiation; tacit failure to perform ineffective]; Bogert, Trusts & Trustees (2d rev. ed. 1982) § 951, pp. 553-562.)

Against this background, the Legislature enacted section 16460, first added to the Probate Code in 1986 as a part of a comprehensive statutory revision of California trust law. (Stats. 1986, ch. 820, § 40, p. 2750 et seq.) Section 16460 expressly directs that a beneficiary's cause of action against the trustee of an express trust accrues not only on actual knowledge of a breach of the trustee's duty, but on receipt by the beneficiary of an "interim or final account in writing, or other written report" by the trustee which provides "sufficient information so that the beneficiary . . . reasonably should have inquired into the existence of the claim," or, where "an interim or final account or other report does not adequately disclose the existence of the claim," when the beneficiary "reasonably should have discovered[] the subject of the claim." (§ 16460, subd. (a)(1) and (a)(2).)

The language of the statute is unambiguous. It requires no elaborate process of construction to support the conclusion that to the extent the prior law of express trusts required actual notice of a breach of trust amounting to repudiation of the trust or a refusal to account on demand to set the statute running in a trustee's favor, that law has been abrogated in those cases in which the trustee has transmitted a "interim or final account in writing, or other written report" to the beneficiary. The receipt of the accounting or report by the beneficiary renders Code of Civil Procedure section 343 inapplicable, and brings into play the inquiry notice provisions of section 16460, provisions which are considerably more favorable to the trustee than those which prevailed under prior law.

On the other hand, it is equally clear that in those cases in which the trustee fails to provide the beneficiary with an account or report, section 16460 does not apply. By their terms, both subdivision (a)(1) and (a)(2) assume that the trustee has reported, and that the report is either adequate to disclose a claim, or is inadequate, as defined. However, neither subdivision contemplates a situation in which the trustee has neither accounted nor reported. We conclude that under those circumstances, the Legislature intended to protect the interests of beneficiaries by relegating trustees to the less advantageous provisions of Code of Civil Procedure section 343, which are triggered only by actual knowledge of a clear breach or of repudiation of trust.

Our interpretation of the statute is supported by the reports of the California Law Revision Commission, which proposed section 16460 as a part of a

comprehensive revision of trust law. (See 18 Cal. Law Revision Com. Rep., Recommendation Proposing the Trust Law (1986), pp. 561, 714.) The Law Revision Commission's comments indicate it was well aware that its proposal would create a significant exception to the then-existing statute of limitations applicable to actions for breach of express trust. In the comment which accompanied section 16460 as originally enacted, the commission referred specifically to the rule of "prior law" announced in *Cortelyou* v. *Imperial Land Co.*, *supra*, 166 Cal. at page 20, and *Oeth* v. *Mason*, *supra*, 247 Cal.App.2d at pages 811-812, and stated that "[s]ection 16460 is a new provision . . . [which] is an exception to" that prior law. (18 Cal. Law Revision Com. Rep., Recommendation Proposing the Trust Law, *supra*, pp. 714-715; see also Cal. Law Revision Com. com., Deering's Ann. Prob. Code, § 16460 (1991 ed.), p. 435 and Cal. Law Revision Com. com., Deering's Ann. Prob. Code (1991 ed.) § 2, p. 6 [providing guidance in interpreting Law Revision Commission comments].) "Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing statutes," especially where ". . . the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislator's votes were based in large measure upon the explanation proposing the bill." (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508].)

Precisely that situation exists here. Section 16460 was enacted exactly as proposed by the Law Revision commission, with a brief comment excerpted from above. Because the commission specifically identified section 16460 as an "exception" to existing law, we infer that the Legislature did not intend to completely abrogate the former law, but as we have discussed, to enact a shorter and more restrictive limitations period applicable only where a trustee has submitted a written account or other written report to the beneficiary. That inference is further supported by the commission's recommendation submitted with the proposed legislation, in which it pointed out that the new scheme "encourages frequent and full accountings by the trustee," and though more protective of trustees than former law, "does not unfairly impinge on the rights of beneficiaries since trustees are more likely to account fully under the proposed law." (18 Cal. Law Revision, Com. Rep., Recommendation Proposing the Trust Law, *supra*, p. 561.)

We conclude that section 16460 is triggered only by the trustee's provision to the beneficiary of an interim or final account, or other written report. (See §§ 16061, 16063 [specifying contents of reports and accounts].) Where no such account or report is provided, the applicable statute of limitations is

Code of Civil Procedure section 343, accompanied by the body of interpretation we have already discussed. With that conclusion in place, we turn to the contentions of the parties.

 DiGrazia's action was filed on November 20, 1990. Anderlini argues section 16460 bars DiGrazia's claims against him because the evidence submitted at trial established that he submitted a written report to DiGrazia in 1986, and that by March 1987, more than three years before her suit was filed, DiGrazia was either aware of Anderlini's breach of trust, or was aware of facts which reasonably should have led her to inquire into the existence of her claim. We find the evidence supports the trial court's implicit conclusion that DiGrazia never received the report, and therefore that section 16460 did not apply in this action. In the alternative, we hold that the accounting report Anderlini caused to be sent to DiGrazia was not a "written report" within the meaning of section 16460, and therefore that it did not bring section 16460 into play even assuming it was received by DiGrazia.

First, the court specifically found that Anderlini had never "provided Mrs. DiGrazia with a report of the accounts of the trust or of his activities as a trustee." That finding was supported by DiGrazia's testimony that she had never received the accounting report that Anderlini now argues triggered the running of the statute, and by his testimony that he never prepared a written report for DiGrazia on his activities as trustee. Accordingly, we conclude that because Anderlini never submitted a written report or other written accounting to DiGrazia, the three-year statute imposed by section 16460 did not apply.

In the alternative, even assuming that DiGrazia received the document Anderlini relies on, we find it was inadequate to trigger the operation of the statute. As we have discussed, section 16460 is made applicable by the trustee's provision of an "interim or final account in writing, or other written report" to the beneficiary. Though section 16460 itself does not describe what such accounts or reports must contain, we read that section together with other portions of the 1986 Trust Law. (See, e.g., *Estate of Reeves* (1991) 233 Cal.App.3d 651, 656 [284 Cal.Rptr. 650].) In particular, we look to sections 16060-16064, which impose on a trustee an affirmative duty to report, describe what a trustee's reports and accounts must contain, and provide for exemptions from the reporting requirement under some circumstances. These statutes make it clear that at a minimum, a trustee's account or report must contain "information about the assets, liabilities, receipts, and disbursements of the trust, the acts of the trustee, and the particulars relating to the administration of the trust relevant to the beneficiary's interest." (§ 16061 [describing contents of report required on beneficiary's request]; compare § 16063 [requiring similar information be contained in mandatory annual accounting].) Though section 16460 does not

directly incorporate these reporting sections, a reasonable interpretation requires the statutes be read together, a conclusion which is reinforced by section 16063, which specifies that a trustee's account must include a statement that "claims against the trustee may not be made after the expiration of three years from the date the beneficiary receives an account or report disclosing facts giving rise to the claim," a clear reference to the provisions of section 16460. (§ 16063, subd. (f); see Cal. Law Revision Com. com., Deering's Ann. Prob. Code, *supra*, § 16063, p. 343 [stating that statute refers to section 16460].) We therefore hold that to trigger the operation of section 16460, a trustee's report or account must conform to the minimum standards set out by sections 16061 or 16063, respectively.

██ Here, the report which Anderlini argues triggered the operation of section 16460 did not contain even the minimum information required by statute. The report consisted of a cover letter from Gino Cecchi stating only that he had examined the accounting records of the restaurant for the period 1984-1986, and without verifying the entries, had attached a schedule of sales and expenses. In addition, the letter expressed Cecchi's opinion that the figures were "in ratios and amounts that a restaurant in the San Francisco area would experience." Attached to the letter were two pages of sales and expense data, without supporting material. There was no separate statement of trust assets, liabilities, disbursements, or receipts, no description of Anderlini's activities, and no information regarding the administration of the trust. In short, the report Anderlini relies on was wholly inadequate to meet his reporting duty, and therefore did not serve to trigger the operation of section 16460.

██ Anticipating our finding that the three-year statute did not apply to DiGrazia's claim against him, Anderlini claims in the alternative that even if the three-year statute did not apply, DiGrazia's claims are barred by the four-year statute, Code of Civil Procedure section 343. We are not persuaded. Again, in the case of an express trust, that statute does not begin to run absent a clear repudiation of the trust by the trustee, or a known breach of the trustee's duty; it is not enough that the beneficiary knows of facts which would lead a reasonable person to investigate the trustee's activities. (See, e.g., *Oeth* v. *Mason*, *supra*, 247 Cal.App.2d at p. 812.) Substantial evidence supports the implicit conclusion of the trial court that the four-year limitation period had not run when DiGrazia filed her action in November 1990 because DiGrazia did not know of facts which would have triggered her duty to act until after November 1986.

In July 1986, when Anderlini was informed by Lucchesi's attorney that the restaurant would no longer make payments to DiGrazia, Anderlini did

nothing, and advised DiGrazia to consult her own attorney because he believed he was subject to a conflict of interest. At the August 1986 meeting, Anderlini told DiGrazia she did not have to worry, and that he would "take care of everything." In response to DiGrazia's attorney's requests for information supporting Anderlini's claim there was no income from the trust, Anderlini referred to Cecchi, the restaurant accountant, who provided her with the financial statement we have discussed. DiGrazia's attorney intended through the end of October 1986 only to "inquire[] into the matter," but she never received "sufficient information" to evaluate whether or not Anderlini had performed his duties as trustee. There was no evidence that Anderlini ever refused to cooperate with DiGrazia or her attorney; his testimony indicates that though he was willing to act, he believed there was no income to pay to DiGrazia after August 1986, and that he lacked the power to invade principal on her behalf. Anderlini did nothing amounting to an open repudiation of his duties as trustee or clear breach of trust, nor did he refuse to account; to the contrary, the evidence tends to show that he responded to requests for financial information on the restaurant. In sum, though the evidence could support the conclusion that Grazia believed Anderlini had not performed properly, there was substantial evidence that Anderlini continued to at least give the appearance of acting as trustee and continued to assure DiGrazia that he would act in that capacity at least through November 1986. We conclude the trial court's finding that DiGrazia's action was not barred by the four-year statute was correct because there was substantial evidence supporting its implicit conclusion that none of Anderlini's activities up to and during November 1986 amounted to a repudiation of the trust, a breach of trust known to DiGrazia, or a refusal to account. (See *Cortelyou v. Imperial Land Co., supra*, 166 Cal. 14, 20 [statute does not begin to run on mere failure of trustee to act, or on beneficiary's failure to demand action]; *Oeth v. Mason, supra*, 247 Cal.App.2d at p. 812 [demand by beneficiary for performance is not enough to start statutory period running; statute runs from the trustee's refusal to act].)

We reject Anderlini's claim that all that was required to set the four-year statute running was DiGrazia's belief that Anderlini had breached his duty to her, and the related claim that the statute began to run when DiGrazia became aware of facts which would have caused a reasonable person to inquire into Anderlini's activities. First, though the evidence supported the conclusion that DiGrazia believed Anderlini had failed to act to protect her, there was substantial evidence that Anderlini simply failed to respond to DiGrazia's demands for action; as noted, the four-year statute runs not from the demand, but from the trustee's known breach of duty, whether by positive breach or refusal to take action required of him by the trust. Second, unless section 16460 applies, the events that trigger the running of the statute

of limitations on an action for breach of express trust are quite limited. The authorities on which Anderlini relies for the proposition that an inquiry notice rule applies in such cases are inapposite because they involved breaches of fiduciary duty in other contexts. (See, e.g., *United States Liabl. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 596-597 [83 Cal.Rptr. 418, 463 P.2d 770] [action based on fiduciary duty running between principal and agent]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 186 [98 Cal.Rptr. 837, 491 P.2d 421] [attorney malpractice]; *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 436-439 [159 P.2d 958] [fraud by fiduciary].) In sum, neither Anderlini's failure to provide income to DiGrazia nor her belief that the failure was a breach of trust was enough to trigger the running of the statute, because there is overwhelming evidence of Anderlini's neglect, there is at the same time substantial evidence that he continued to as trustee at least through and including November 1986. Thus, DiGrazia's action filed on November 20, 1990, was timely because it was filed within the four-year period specified by Code of Civil Procedure section 343.

## II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## V.

### *Disposition*

That part of the judgment awarding damages against Anderlini for breach of trust for his failure to supervise and approve salary payments to Barbara Lucchesi is vacated, and the matter is remanded to the trial court for recalculation of the damage award as against Anderlini. In all other respects, the judgment is affirmed. The parties are to bear their own costs.

Kline, P. J., and Phelan, J., concurred.

Petitions for a rehearing were denied March 25, 1994.

---

*See footnote, *ante*, page 1337.